PAUL J. BEARD II (State Bar No. 210563)
FISHERBROYLES LLP
4470 W. Sunset Blvd., Suite 93165
Los Angeles, CA 90027
Telephone: (818) 216-3988
Facsimile: (213) 402-5034
E-mail: paul.beard@fisherbroyles.com

Attorneys for Plaintiffs
CALIFORNIA RENTAL HOUSING ASSOCIATION, ET AL.

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA RENTAL HOUSING ASSOCIATION, MARY MONTANO, and TRANG HO, <br><br> Plaintiffs <br><br> v. <br><br> GAVIN NEWSOM, in his official capacity as Governor of the State of California; ROB BONTA, in his official capacity as Attorney General of the State of California; and DOES 1 through 20, inclusive, <br><br> Defendants. | Case No.: <br><br> **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, AND DAMAGES** <br><br> **[42 U.S.C. § 1983]** |

## INTRODUCTION

1.     This is a federal civil rights challenge to a California law, Assembly Bill 832, that purports to indefinitely bar owners of rental property in the State of California from repossessing their units for tenants' failure to pay rent—*even when tenants have the financial means of doing so*. AB 832 is the latest extension of a statewide moratorium on evictions dating back to March 2020.

2.     By eliminating the right to repossess property for failure to pay rent, the law unconstitutionally burdens owners' property rights, including their rights to lawfully exclude and repossess their properties, in violation of the United States Constitution's Takings Clause. The law further rewrites and substantially impairs existing leases and rental agreements, without adequate justification, in violation of the Contracts Clause of Constitution.

3.     Plaintiffs are an association of rental housing owners, as well as individual landlords, who—for over one year—have been severely burdened financially and emotionally by a seemingly never-ending eviction moratorium, with AB 832 as the most recent iteration of the same.

4.     Plaintiffs seek relief from enforcement of AB 832 and future similar laws that continue or impose an unconstitutional moratorium on the right of rental housing owners to repossess their properties for nonpayment of rent.

## JURISDICTION AND VENUE

5.     This action is brought pursuant to 42 U.S.C. § 1983, based on Defendants' deprivation of the constitutional rights of Plaintiffs under the Fifth and Fourteenth Amendments to the United States Constitution, as well as under Article I, Section 10, Clause 1 of the United States Constitution. Accordingly, this Court has federal question jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343. This Court has authority to grant the requested declaratory and injunctive relief, and damages, pursuant to 28 U.S.C. § 2201, 28 U.S.C. § 1343(a), and 42 U.S.C. § 1983, and to award attorneys' fees and costs pursuant to, *inter alia*, 42 U.S.C. § 1988.

6.    Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b)(1) and (2), because Defendants are located within this district and a substantial part of the events giving rise to Plaintiffs' claims occurred in this district.

## PARTIES

7.    Plaintiff California Rental Housing Association (CalRHA) represents over 19,000+ dues-paying members who own more than 536,000+ units. Members consist of small, medium, and large rental housing owners throughout the State of California. All of CalRHA's members are impacted by AB 832, which guts their rental agreements and leases, and severely burdens their property rights. Members are ready, willing, and able to repossess their units for tenants' failure to pay rent, but are barred from doing so because of AB 832. CalRHA brings this challenge on behalf of itself and its members to vindicate their civil rights under 42 U.S.C. § 1983.

8.    Plaintiff Mary Montano is 77 years old, and a California citizen and resident. She lives on $1,700 Social Security income and the income from a duplex that she owns and still has a mortgage on.  She rented half of her duplex to an architect who has a fancy website boasting of million-dollar projects.  He recently did a road trip with his three children to see historical landmarks. Yet he has refused to pay rent for the past 16 months. While he has submitted to Ms. Montano a declaration of COVID-19-related financial distress, he refuses to complete the paperwork to apply for rental assistance, because he knows he would not qualify given the income and wealth he has.  The other ½ of the duplex is paying; however, that is only enough to cover the mortgage on the property.  Ms. Montano had to take out a substantial loan to pay her property taxes.  She doesn't know what she is going to do next if she cannot evict the nonpaying tenant and replace him with a paying tenant. The lease with the nonpaying tenant makes clear she has the right to evict and repossess the property for failure to pay rent. Beyond the economic harm, she has been suffering enormous mental and emotional distress as the direct result of her inability to rent out her property to paying tenants.

9.    Plaintiff Trang Ho owns rental units in the City of Los Angeles. One unit

has a tenant who hasn't paid rent since January 2021; another tenant in the same unit hasn't paid rent since June 2020. In another rental property owned by Ms. Ho, there is a tenant who has refused to pay rent since March 2021. All were provided a declaration of COVID-19-related financial distress form, which they have not filled out. There is no evidence that any of the nonpaying tenants lacks the means to pay rent. Ms. Ho's leases executed by the nonpaying tenants contain a provision recognizing the right of eviction and repossession for failure to pay rent.  Ms. Ho has been suffering significant mental and emotional distress as the direct result of her inability to rent out her property to paying tenants.

10.    Defendant GAVIN NEWSOM is sued in his official capacity as Governor of the State of California. He is charged with the executive power of the State, including the responsibility to "see that the law"—including AB 832—"is faithfully executed." Cal. Const. art. V, § 1.

11.    Defendant ROB BONTA is sued in his official capacity as Attorney General of the State of California. The Attorney General's responsibilities include enforcing the laws, including AB 832.

12.    Plaintiffs are ignorant of the true names and capacities of Defendants sued herein as DOES 1 through 20 and therefore sue Defendants by such fictitious names. Plaintiffs are informed and believe, and on that basis allege, that each of the fictitiously named Defendants is in some manner responsible or liable for the events and happenings referred to herein, and that each such fictitiously named Defendant caused injury and damage to Plaintiffs as alleged in this Complaint. Plaintiffs will amend or seek leave of court to amend this Complaint to allege the true names and capacities of such fictitiously named Defendants when the same are ascertained.

13.    Plaintiffs are informed and believe, and thereon allege, that at all relevant times, each of the Defendants was the agent of each of the remaining Defendants and, in doing the things hereinafter alleged, was acting within the course and scope of such agency or employment.

# **FACTUAL ALLEGATIONS**

14.     On August 31, 2020, purportedly in response to the COVID-19 pandemic, the Governor signed into law Assembly Bill ("AB") 3088. AB 3088 was intended to provide "temporary" protections from eviction for residents who fail to pay the rent that came due between March 1, 2020, and January 31, 2021.

15.     Relevantly, AB 3088 rewrites leases and burdens the property rights of rental housing owners as follows:

a.     A tenant who submits a so-called declaration of COVID-19-related financial distress ("COVID declaration") claiming decreased income or increased expenses due to the COVID-19 pandemic, is automatically protected against eviction for rent due between March 1, 2020 and August 31, 2020. No owner who receives that declaration, regardless of its truthfulness and regardless of the tenant's actual ability to pay rent, can exercise his contract and property rights to repossess his unit for nonpayment of rent coming due between March and August 2020.

b.     A tenant who submits a COVID declaration and pays 25 percent of payments missed between September 1, 2020, and January 31, 2021, is automatically protected against eviction. No owner who receives that declaration and 25% of rental payments missed during that time period, regardless of the declaration's truthfulness and regardless of the tenant's actual ability to pay full rent, can exercise his contract and property rights to repossess his unit for nonpayment of rent coming due between September 2020 and January 2021.

c.     Beyond submitting a signed COVID declaration to the owner, a tenant who wishes to be protected against eviction under AB 3088 does not need to actually prove inability to pay. At most, the tenant can be required to produce evidence only of a decrease in income or increase in expenses due to COVID-19. Thus, even independently wealthy tenants who experience

a decrease in income or an increase in expenses due to COVID (however minor), but who can easily make rental payments in full during the relevant time periods, can defer those payments and shield themselves from eviction.

16.     On January 29, 2021, the Governor signed into law Senate Bill ("SB") 91, which extends AB 3088's eviction moratorium.

17.     Relevantly, SB 91 rewrites leases and burdens the property rights of rental housing owners as follows: Under SB 91, a tenant who submits a COVID declaration and pays 25 percent of payments missed between September 1, 2020, and *June 30, 2021*, in whole or in part, is automatically protected against eviction. No owner who receives that declaration and 25% of rental payments missed during that time period, regardless of the declaration's truthfulness and regardless of the tenant's actual ability to pay full rent, can exercise his contract and property rights to repossess his unit for nonpayment of rent coming due between September 2020 and June 2021.

18.     On June 11, 2021, with the COVID-19 pandemic substantially subsiding, the Governor took action to fully reopen the State. The Governor lifted pandemic executive orders, including terminating the stay-at-home order implemented early in the pandemic. Effective June 15, state-wide restrictions, such as physical distancing and capacity limits, also were lifted. Further, between June 2020—in the throes of the COVID-19 pandemic—and June 2021, the State's unemployment rate has been nearly halved from 14.1% to 7.7%.

19.     Nevertheless, on June 28, 2021, the Governor signed AB 832, further extending the eviction moratorium for an additional three months. A true and correct copy of AB 832 is attached hereto as Exhibit A and incorporated herein by reference.

20.     AB 832 rewrites leases and burdens the property rights of rental housing owners as follows: A tenant who submits a COVID declaration and pays 25 percent of payments missed through September 30, 2021, in whole or in part, is automatically protected against eviction. No owner who receives that declaration and 25% of rental

payments missed during that time period, regardless of the declaration's truthfulness and regardless of the tenant's actual ability to pay full rent, can exercise his contract and property rights to repossess his unit for nonpayment of rent coming due between September 2020 and September 2021.

21.     CalRHA's members and individual Plaintiffs own rental properties in the State of California with nonpaying tenants. Frequently, those nonpaying tenants have been financially capable of paying the full rent during the pandemic, but were able to evade the obligation to pay by virtue of the State's generous eviction moratorium most recently extended by AB 832. While the economic impact on rental housing owners of such a moratorium is self-evident, the moratorium has also inflicted untold mental and emotional injury on owners as they grapple with the financial implications of not being able to make ends meet.

22.     Many rental housing owners, including individual Plaintiffs and Plaintiff CalRHA's members, will never recover the unpaid rents that have accumulated during the moratorium. Further, even those owners who recover some or all of the unpaid rents will have been compelled, by law, to give tenants interest-free loans for the period of time during which rents went unpaid, because the law does not provide for the payment of interest on delayed rent payments.

## FIRST CLAIM

### Violation of the Takings Clause of the United States Constitution

### (U.S. Const. amends. V, XIV; 42 U.S.C. § 1983)

23.     Plaintiffs incorporate herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

24.     The Takings Clause of the Fifth Amendment to the United States Constitution prohibits the government from taking private property unless (a) it is for a "public use" and (b) "just compensation" is paid to the rental housing owner. U.S. Const. amend. V, XIV (making Takings Clause applicable to state and local governments); *see also Brown v. Legal Foundation of Washington*, 538 U.S. 216, 231-

32 (2003) (underscoring the Takings Clause's two separate requirements). The Takings Clause was enshrined in the Constitution so that the government would not "force some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Armstrong v. United States*, 364 U.S. 40, 49 (1960).

25.     If the government "fails to meet the 'public use' requirement," then "that is the end of the inquiry," and "[n]o amount of compensation can authorize such action." *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 543 (2005). A government taking of property for a private use or purpose is barred. As the United States Supreme Court has explained: "it has long been accepted that the sovereign" (i.e., the government) "may not take the property of A for the sole purpose of transferring it to B." *Kelo v. City of New London*, 545 U.S. 469, 477 (2005); *Calder v. Bull*, 3 U.S. 386 (1798). (holding that "[i]t is against all reason and justice" to presume that the legislature has been entrusted with the power to enact "a law that takes property from A and gives it to B")).

26.     "Nor would the [government] be allowed to take property under the mere pretext of a public purpose, when its actual purpose was to bestow a private benefit." *Kelo*, 545 U.S. at 478. If a taking is designed simply "to benefit a particular class of identifiable individuals," then the taking is not for a "public use" consistent with the Public Use Clause, and is therefore unconstitutional. *Id.* Significantly, takings with only an "incidental" public benefit "are forbidden by the Public Use Clause." *Id.* at 490 (Kennedy, J., concurring); *see also Loretto v. Teleprompter Manhattan Catv Corp.,* 458 U.S. 419 (1982) (holding that a "taking" under the Takings Clause occurs even when, under the authority of law, "a stranger directly invades and occupies the owner's property" and does not pass to or through the government's hands).

27.     AB 832 imposes a moratorium on evictions for nonpayment of rent, effectively transferring the fundamental right to exclude from owners to nonpaying tenants. Further, AB 832 eliminates, for an indefinite period of time, owners' right to make economically beneficial and productive use of their rental properties, because the law indefinitely deprives owners of the only legal remedy they have to guarantee a

reasonable return on their investment: the right to terminate a tenancy and evict a tenant for nonpayment of rent.

28.     Through its moratorium on evictions, AB 832 effects a *per se* taking of rental housing owners' properties, because it indefinitely grants tenants near-unqualified access to and use of the properties, as well as the right to exclude owners. *See, e.g., Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 434–35 (1982) (regulation requiring property owner to allow cable company to install cable facilities on his property effects a per se taking).

29.     In the alternative, AB 832 effects a categorical regulatory taking under *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003 (1992), because it deprives owners of all "economically beneficial" or "viable" use of their properties. At a minimum, AB 832 effects a noncategorical regulatory taking under *Penn Central Transp. Co. v. New York City*, 438 U.S. 104 (1978), because: (1) the moratorium's "economic impact" on rental housing owners is devastating, given their right to lawfully repossess their properties for nonpayment of rent is for all practical intents and purposes eliminated; (2) the extent to which the law has interfered with distinct investment-backed expectations, based on existing law and rental agreements, is substantial; and (3) the character of Defendants' action—enforcement of a law that confers no reciprocity of advantage, but rather penalizes owners to the exclusive benefit of tenants—weighs decisively in favor of finding a taking.

30.     The taking effected by the moratorium is unconstitutional under the Fifth Amendment, for two reasons. First, the taking is not for a public use or purpose. The moratorium's express purpose and effect are to benefit "a particular class of identifiable individuals"—namely, tenants. *Kelo*, 545 U.S. at 478. As such, the moratorium violates the Public Use requirement of the Takings Clause.

31.     Second, AB 832 provides no immediate or adequate mechanism for compensating owners for the loss of their property rights. The moratorium eliminates housing owners' full rights to possess, use, and exclude, pursuant to their existing rental

agreements and the Constitution. Yet AB 832 provides no immediate and adequate compensation for the taking. AB 832 is at total cross-purposes with the Takings Clause, which is intended to ensure that government does not "force some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Armstrong*, 364 U.S. at 49.

32.    Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm to their constitutional rights unless Defendants are immediately enjoined from implementing and enforcing AB 832, and any extension of the existing moratorium or a new eviction moratorium enacted by the State in the future. Further, Plaintiffs are entitled to nominal and compensatory damages for violation of their constitutional rights under 42 U.S.C. § 1983.

## SECOND CLAIM

### Violation of the Contracts Clause of the United States Constitution
### (U.S. Const. Art. I, § 10, cl. 1; 42 U.S.C. § 1983)

33.    Plaintiffs incorporate herein by reference each and every allegation contained in the preceding paragraphs of this Complaint, as though fully set forth herein.

34.    The Contracts Clause of the United States Constitution prohibits local governments from passing "any . . . Law impairing the Obligation of Contracts." U.S. Const., Art. I, §10, cl. 1. Contracts Clause violations are actionable under 42 U.S.C. § 1983. *Southern California Gas Co. v. City of Santa Ana*, 336 F.3d 885, 887 (9th Cir. 2003) ("The right of a party not to have a State, or a political subdivision thereof, impair its obligations of contract is a right secured by the first article of the United States Constitution. A deprivation of that right may therefore give rise to a cause of action under section 1983.").

35.    Whether a law substantially impairs a contractual relationship depends upon "the extent to which the law undermines the contractual bargain, interferes with a party's reasonable expectations, and prevents the party from safeguarding or reinstating his rights." *Sveen v. Melin*, 138 S. Ct. 1815, 1822 (2018). First, the court will determine

whether the law "operate[s] as a substantial impairment of a contractual relationship." *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 244 (1978). "In answering that question, the Court has considered the extent to which the law undermines the contractual bargain, interferes with a party's reasonable expectations, and prevents the party from safeguarding or reinstating his rights." *Sveen*, 138 S. Ct. at 1822. Second, the court considers "whether the [challenged] law is drawn in an 'appropriate' and 'reasonable' way to advance 'a significant and legitimate public purpose.'" *Sveen*, 138 S. Ct. at 1822 (quoting *Energy Reserves Group, Inc. v. Kansas Power & Light Co.*, 459 U.S. 400, 411-412 (1983)).

36.    Here, AB 832 substantially impairs the contractual relationship between rental housing owners and their tenants. Individual plaintiffs and members of CalRHA have leases entitling owners to repossess units when rent is not paid. The law has rewritten the lease to eliminate that contract right for an indefinite period of time. While the initial moratorium, enacted by AB 3088, was conceived of as a temporary measure, subsequent statutory extensions of the moratorium make clear that the elimination of the eviction right will persist for an indefinite period of time. AB 832 undermines the contractual bargain that is the hallmark of all rental agreements, including the agreements of individual plaintiffs and CalRHA members.

37.    In addition, AB 832 significantly interferes with owners' reasonable expectations. No rental housing owner, including individual plaintiffs and CalRHA's members, could ever have foreseen or expected the COVID-19 pandemic (the State's purported justification for the moratorium) and or the extent to which governments (like the State) would use those extraordinary circumstances to justify crippling restrictions on their livelihoods as owners, and violations of their rights under existing rental agreements and the United States Constitution. Never before have rental housing owners faced the prospect of being compelled by law to indefinitely house tenants irrespective of payment of rent.

38.    Because AB 832 substantially impairs contracts, Defendants bear the

burden of showing that the impairment is both reasonable and necessary. Defendants cannot meet that burden. AB 832 cites the COVID-19 pandemic as its justification. But, as the State knows, the spread and effects of COVID-19 have dramatically waned, as evidenced by the Governor's lifting of COVID-related executive orders on June 11. There being no bone fide emergency, Defendants cannot establish that the substantial impairment of housing owners' rental agreements is reasonable or necessary.

39.    In sum, AB 832 unilaterally rewrites all rental agreements within the State to eliminate the contractual right to repossess units for nonpayment of rent, without any attempt to tie such wholesale revisions to the COVID-19 pandemic. Even if there were a legitimate purpose behind AB 832, which there is not, the complete obliteration of the contract rights of individual plaintiffs and CalRHA's members is not a reasonable or necessary means of achieving that purpose. Accordingly, the contractual impairments effectuated by AB 832 violate the Contracts Clause and are unconstitutional.

40.    In enforcing AB 832 to Plaintiffs and other rental housing owners, Defendants are acting under color of law. Defendants' conduct in adopting and enforcing that law has deprived and, unless enjoined, will continue to deprive owners of their rights, privileges, and immunities secured by the United States Constitution and/or laws of the United States to which owners are entitled.

41.    Unless Defendants are enjoined and restrained from enforcing AB 832, and any extension of the existing moratorium or a new eviction moratorium enacted by the State in the future, Plaintiffs and other owners will be irreparably injured. They will be deprived of rights guaranteed under the United States Constitution. Further, Plaintiffs are entitled to nominal and compensatory damages for violation of their constitutional rights under 42 U.S.C. § 1983.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request relief as follows:

1.    A declaratory judgment that AB 832 is null and void, and of no effect, because it deprives rental housing owners, including individual Plaintiffs and

CalRHA's  members, of the rights, privileges, and immunities secured by the United States Constitution, as follows:

      a.  It effects an unconstitutional taking of private property, in violation of the Fifth and Fourteenth Amendments to the United States Constitution.

      b.  It violates the Contracts Clause of Article I, section 10, of the United States Constitution.

2.    A temporary, preliminary, and permanent injunction enjoining Defendants, and all those in active concert or participation with them, from implementing or enforcing AB 832, as well as any similar statutory extension or other law enacted in the future that continues or otherwise imposes a moratorium on the right to evict and repossess rental property.

3.    Nominal and compensatory damages to individual Plaintiffs for violation of their federal constitutional rights.

4.    Reasonable attorneys' fees and costs incurred in this action, including fees and costs incurred to challenge AB 832 pursuant to, *inter alia*, 42 U.S.C. § 1988.

5.    Any and all other relief to Plaintiffs as the Court may deem proper and just.

DATED: August 5, 2021      **FISHERBROYLES LLP**

s/ Paul Beard II

_____

        PAUL BEARD II

Attorneys for Plaintiffs California Rental Housing Association, et al.

# EXHIBIT A

8/5/2021          Bill Text - AB-832 COVID-19 relief: tenancy: federal rental assistance.

Case 2:21-cv-01394-JAM-JDP    Document 1    Filed 08/05/21    Page 15 of 52

# *California*
# LEGISLATIVE INFORMATION

| Home | Bill Information | California Law | Publications | Other Resources | My Subscriptions | My Favorites |

---

**AB-832 COVID-19 relief: tenancy: federal rental assistance.** (2021-2022)

SHARE THIS:  

Date Published: 06/29/2021 02:00 PM

## Assembly Bill No. 832

## CHAPTER 27

An act to amend Sections 789.4, 1788.65, 1788.66, 1942.5, and 3273.1 of the Civil Code, to amend Sections 116.223, 871.10, 871.11, 871.12, 1161.2.5, 1179.02, 1179.03, 1179.03.5, 1179.04, 1179.05, and 1179.07 of, to amend and repeal Section 1161.2 of, and to add and repeal Chapter 6 (commencing with Section 1179.08) of Title 3 of Part 3 of, the Code of Civil Procedure, and to amend Sections 50897, 50897.1, 50897.2, 50897.3, and 50897.4 of, and to add Sections 50897.2.1 and 50897.3.1 to, the Health and Safety Code, relating to tenancy, and declaring the urgency thereof, to take effect immediately.

[ Approved by Governor June 28, 2021. Filed with Secretary of State June 28, 2021. ]

## LEGISLATIVE COUNSEL'S DIGEST

AB 832, Chiu. COVID-19 relief: tenancy: federal rental assistance.

(1) Existing law prohibits a landlord from interrupting or terminating utility service furnished to a tenant with the intent to terminate the occupancy of the tenant and imposes specified penalties on a landlord who violates that prohibition. Existing law, until July 1, 2021, imposes additional damages in an amount of at least $1,000, but not more than $2,500, on a landlord that violates that prohibition if the tenant has provided a declaration of COVID-19 financial distress, as specified.

This bill would extend the imposition of those additional damages until October 1, 2021.

(2) Existing law regulates the activities of a person or entity that has bought charged-off consumer debt, as defined, for collection purposes and the circumstances pursuant to which the person may bring suit. Existing law, until July 1, 2021, prohibits a person from selling or assigning unpaid COVID-19 rental debt, as defined, for the time period between March 1, 2020, and June 30, 2021. Existing law also prohibits a person from selling or assigning unpaid COVID-19 rental debt, as defined, for that same time period of any person who would have qualified for rental assistance funding, provided pursuant to specified federal law, if the person's household income is at or below 80% of the area median income for the 2020 calendar year.

This bill would extend the time period to which both prohibitions against selling or assigning unpaid COVID-19 rental debt apply to September 30, 2021, and would repeal only the general prohibition on October 1, 2021. The bill would extend the calculation of the median income to the 2021 calendar year.

(3) Existing law, until July 1, 2021, prohibits a landlord from bringing an action for unlawful detainer based on a cause of action other than nonpayment of COVID-19 rental debt, as defined, for the purpose of retaliating against the lessee because the lessee has COVID-19 rental debt.

This bill would extend this provision until October 1, 2021.

(4) Existing law, the COVID-19 Small Landlord and Homeowner Relief Act of 2020, among other things, requires that a mortgage servicer, as defined, that denies a forbearance request during the effective time period provide specified written notice to the borrower, as defined, that sets forth the specific reason or reasons that forbearance was not provided if certain conditions are met. The act defines the "effective time period" to mean the period between the operational date of the act and September 1, 2021.

This bill would extend the "effective time period" until December 1, 2021.

(5) Existing law, until July 1, 2025, provides that a small claims court has jurisdiction in any action for recovery of COVID-19 rental debt, as defined, regardless of the amount demanded. Existing law prohibits the commencement of an action to recover COVID-19 rental debt brought under these provisions before August 1, 2021.

This bill would extend these provisions until October 1, 2025. The bill would also extend the above-described prohibition on commencing an action in small claims court to recover COVID-19 rental debt until November 1, 2021.

(6) Existing law, until July 1, 2027, requires a plaintiff, in an action seeking recovery of COVID-19 rental debt, to attach to the complaint documentation showing that the plaintiff has made a good faith effort to investigate whether governmental rental assistance is available to the tenant, seek governmental rental assistance for the tenant, or cooperate with the tenant's efforts to obtain rental assistance from any governmental entity or other third party, as specified. Existing law, until July 1, 2027, also authorizes the court to reduce the damages awarded for any amount of COVID-19 rental debt sought if the court determines that the landlord refused to obtain state rental assistance, as described below, if the tenant met the eligibility requirements and funding was available. Existing law creates an exception to that authorization within any jurisdiction that received a direct allocation of assistance from the Secretary of the Treasury pursuant to the federal Consolidated Appropriations Act, 2021 and did not accept a block grant pursuant to the rental assistance program described below, as specified. Existing law requires, subject to a certain exception, an action subject to that provision that was pending as of January 29, 2021, to be stayed until July 1, 2021.

This bill would repeal the exception to the damage reduction authorization described above, would instead require those actions to be stayed until November 1, 2021, and would extend these provisions until October 1, 2027.

Existing law, until July 1, 2025, prohibits a court from awarding attorney's fees that exceed specified amounts, which vary based on whether the matter is contested or uncontested, in any action to recover COVID-19 rental debt, as defined, brought as a limited or unlimited civil case under ordinary circumstances, determined as provided.

This bill would extend those provisions until October 1, 2025.

(7) Existing law, in certain actions involving the possession of real property, including unlawful detainer actions, authorizes the clerk to allow access to limited civil case records only to certain persons. Existing law authorizes the clerk to allow access to these records to any person by order of the court, if judgment is entered for the plaintiff after trial more than 60 days after filing the complaint or 60 days after the complaint has been filed, if the plaintiff prevails in the action within 60 days of filing the complaint. Until July 1, 2021, these provisions allowing access to court records to any person do not apply if the plaintiff filed the action between March 4, 2020, and June 30, 2021, and the action is based on the alleged default in the payment of rent. Subject to those provisions, until July 1, 2021, existing law authorizes the clerk to allow access to civil case records for actions seeking recovery of COVID-19 rental debt, as defined, only to certain persons.

This bill would, among other things, extend the exception described above indefinitely and would apply it to actions filed between March 4, 2020, and September 30, 2021, and would extend indefinitely the limitation on access to civil case records for actions seeking recovery of COVID-19 rental debt. The bill would require the Judicial Council to develop forms for parties to utilize in actions brought for recovery of COVID-19 rental debt.

(8) Existing law, the COVID-19 Tenant Relief Act, until July 1, 2025, establishes procedural requirements and limitations on evictions for nonpayment of rent due to COVID-19 rental debt, as defined. The act, among other things, prohibits a tenant that delivers a declaration, under penalty of perjury, of COVID-19-related financial distress from being deemed in default with regard to the COVID-19 rental debt, as specified.

The act requires that a notice that demands payment of COVID-19 rental debt served pursuant to specified law be modified, as provided. The act requires that notices provided between September 1, 2020, and June 3, 2021,

comply with certain requirements, and things that are included in certain text. The act requires the Department of Real Estate to make available an official translation of that text into certain languages by no later than February 15, 2021.

This bill would extend the operation of the COVID-19 Tenant Relief Act to October 1, 2025, and would also extend operation of those requirements until September 30, 2021. The bill would also make conforming changes and would require notices described above that are served on or after July 1, 2021, to include certain text. The bill would instead require the Department of Housing and Community Development (HCD) to make available, on or before July 15, 2021, the official translation described above.

(9) Existing law establishes a program for providing rental assistance, using funding made available pursuant to the federal Consolidated Appropriations Act, 2021 (Appropriations Act), administered by HCD. Existing law, among other things, provides for the allocation of block grant funds to localities, as defined, that meet certain population requirements. Existing law requires an eligible grantee under these provisions to request an allocation from HCD by February 12, 2021, and requires HCD to complete the initial allocation of these funds no later than February 19, 2021. Existing law authorizes eligible uses of funds allocated to grantees under these provisions, consistent with the requirements of the Appropriations Act. Existing law provides that a grantee may provide assistance for rental arrears as a payment directly to a landlord on behalf of an eligible household by entering into an agreement with the landlord, subject to specified conditions, including that compensation be set at 80% of an eligible household's unpaid rental debt accumulated from April 1, 2020, to March 31, 2021. Existing law limits funds used to provide assistance for prospective rent payments for an eligible household to 25% of the eligible household's monthly rent.

This bill would revise and recast those provisions, including revisions to the state allocation of funds. The bill would specify requirements for Round 1 and Round 2 funds, as defined. This bill would, among other things, set the compensation for an eligible household's unpaid rental debt accumulated on or after April 1, 2020 at 100%. This bill would require funds used to provide assistance for prospective rent payments for an eligible household to be set at 100% of the eligible household's monthly rent. The bill would specify requirements for grantees and eligibility for rental assistance.

This bill would enact the COVID-19 Rental Housing Recovery Act, which would, until September 30, 2024, among other things, place certain restrictions on an unlawful detainer action pertaining to residential real property that is based, in whole or in part, on nonpayment of rental debt that accumulated due to COVID-19 hardship, including by prohibiting a court from issuing a summons on a complaint for unlawful detainer that seeks possession of residential real property based on nonpayment of rental debt that accumulated due to COVID-19 hardship unless the plaintiff also files a statement, under penalty of perjury, that the plaintiff attempted to obtain rental assistance pursuant to a program described above and was denied and a copy of a final decision, as defined, from the pertinent government rental assistance program denying a rental assistance application for the property at issue in the case.

Existing law, in a legal action to recover rent or other financial obligations under a lease that accrued between April 1, 2020, and June 30, 2021, requires, before entry of judgment in the plaintiff's favor, the plaintiff to verify certain information, under penalty of perjury, relating to state rental assistance.

This bill would apply those provisions to rent or other financial obligations under a lease that accrued between April 1, 2020, and September 30, 2021.

By expanding the scope of the crime of perjury, the bill would impose a state-mandated local program.

(10) The California Constitution requires the state to reimburse local agencies and school districts for certain costs mandated by the state. Statutory provisions establish procedures for making that reimbursement.

This bill would provide that no reimbursement is required by this act for a specified reason.

(11) Existing constitutional provisions require that a statute that limits the right of access to the meetings of public bodies or the writings of public officials and agencies be adopted with findings demonstrating the interest protected by the limitation and the need for protecting that interest.

This bill would make legislative findings to that effect.

(12) This bill would declare that it is to take effect immediately as an urgency statute.

Vote: 2/3   Appropriation: no   Fiscal Committee: yes   Local Program: yes

THE PEOPLE OF THE STATE OF CALIFORNIA DO ENACT AS FOLLOWS:

**SECTION 1.** Section 789.4 of the Civil Code is amended to read:

**789.4.** (a) In addition to the damages provided in subdivision (c) of Section 789.3, a landlord who violates Section 789.3, if the tenant has provided a declaration of COVID-19 financial distress pursuant to Section 1179.03 of the Code of Civil Procedure, shall be liable for damages in an amount that is at least one thousand dollars ($1,000) but not more than two thousand five hundred dollars ($2,500), as determined by the trier of fact.

(b) This section shall remain in effect until October 1, 2021, and as of that date is repealed.

**SEC. 2.** Section 1788.65 of the Civil Code is amended to read:

**1788.65.** (a) Notwithstanding any other law, a person shall not sell or assign any unpaid COVID-19 rental debt, as defined in Section 1179.02 of the Code of Civil Procedure, for the time period between March 1, 2020, and September 30, 2021.

(b) This section shall remain in effect until October 1, 2021, and as of that date is repealed.

**SEC. 3.** Section 1788.66 of the Civil Code is amended to read:

**1788.66.** Notwithstanding any other law, a person shall not sell or assign any unpaid COVID-19 rental debt, as defined in Section 1179.02 of the Code of Civil Procedure, for the time period between March 1, 2020, and September 30, 2021, of any person who would have qualified for rental assistance funding provided by the Secretary of the Treasury pursuant to Section 501 of Subtitle A of Title V of Division N of the federal Consolidated Appropriations Act, 2021 (Public Law 116-260) or Section 3201 of Subtitle B of Title III of the federal American Rescue Plan Act of 2021 (Public Law 117-2), if the person's household income is at or below 80 percent of the area median income for the 2020 or 2021 calendar year.

**SEC. 4.** Section 1942.5 of the Civil Code, as amended by Section 5 of Chapter 2 of the Statutes of 2021, is amended to read:

**1942.5.** (a) If the lessor retaliates against the lessee because of the exercise by the lessee of the lessee's rights under this chapter or because of the lessee's complaint to an appropriate agency as to tenantability of a dwelling, and if the lessee of a dwelling is not in default as to the payment of rent, the lessor may not recover possession of a dwelling in any action or proceeding, cause the lessee to quit involuntarily, increase the rent, or decrease any services within 180 days of any of the following:

(1) After the date upon which the lessee, in good faith, has given notice pursuant to Section 1942, has provided notice of a suspected bed bug infestation, or has made an oral complaint to the lessor regarding tenantability.

(2) After the date upon which the lessee, in good faith, has filed a written complaint, or an oral complaint which is registered or otherwise recorded in writing, with an appropriate agency, of which the lessor has notice, for the purpose of obtaining correction of a condition relating to tenantability.

(3) After the date of an inspection or issuance of a citation, resulting from a complaint described in paragraph (2) of which the lessor did not have notice.

(4) After the filing of appropriate documents commencing a judicial or arbitration proceeding involving the issue of tenantability.

(5) After entry of judgment or the signing of an arbitration award, if any, when in the judicial proceeding or arbitration the issue of tenantability is determined adversely to the lessor.

In each instance, the 180-day period shall run from the latest applicable date referred to in paragraphs (1) to (5), inclusive.

(b) A lessee may not invoke subdivision (a) more than once in any 12-month period.

(c) To report, or to threaten to report, the lessee or individuals known to the landlord to be associated with the lessee to immigration authorities is a form of retaliatory conduct prohibited under subdivision (a). This

8/5/2021                    Bill Text - AB-832 COVID-19 relief: tenancy: federal rental assistance.

Case 2:21-cv-01394-JAM-JDP   Document 1   Filed 08/05/21   Page 19 of 52

subdivision shall in no way limit the definition of retaliatory conduct prohibited under this section.

(d) Notwithstanding subdivision (a), it is unlawful for a lessor to increase rent, decrease services, cause a lessee to quit involuntarily, bring an action to recover possession, or threaten to do any of those acts, for the purpose of retaliating against the lessee because the lessee has lawfully organized or participated in a lessees' association or an organization advocating lessees' rights or has lawfully and peaceably exercised any rights under the law. It is also unlawful for a lessor to bring an action for unlawful detainer based on a cause of action other than nonpayment of COVID-19 rental debt, as defined in Section 1179.02 of the Code of Civil Procedure, for the purpose of retaliating against the lessee because the lessee has a COVID-19 rental debt. In an action brought by or against the lessee pursuant to this subdivision, the lessee shall bear the burden of producing evidence that the lessor's conduct was, in fact, retaliatory.

(e) To report, or to threaten to report, the lessee or individuals known to the landlord to be associated with the lessee to immigration authorities is a form of retaliatory conduct prohibited under subdivision (d). This subdivision shall in no way limit the definition of retaliatory conduct prohibited under this section.

(f) This section does not limit in any way the exercise by the lessor of the lessor's rights under any lease or agreement or any law pertaining to the hiring of property or the lessor's right to do any of the acts described in subdivision (a) or (d) for any lawful cause. Any waiver by a lessee of the lessee's rights under this section is void as contrary to public policy.

(g) Notwithstanding subdivisions (a) to (f), inclusive, a lessor may recover possession of a dwelling and do any of the other acts described in subdivision (a) within the period or periods prescribed therein, or within subdivision (d), if the notice of termination, rent increase, or other act, and any pleading or statement of issues in an arbitration, if any, states the ground upon which the lessor, in good faith, seeks to recover possession, increase rent, or do any of the other acts described in subdivision (a) or (d). If the statement is controverted, the lessor shall establish its truth at the trial or other hearing.

(h) Any lessor or agent of a lessor who violates this section shall be liable to the lessee in a civil action for all of the following:

(1) The actual damages sustained by the lessee.

(2) Punitive damages in an amount of not less than one hundred dollars ($100) nor more than two thousand dollars ($2,000) for each retaliatory act where the lessor or agent has been guilty of fraud, oppression, or malice with respect to that act.

(i) In any action brought for damages for retaliatory eviction, the court shall award reasonable attorney's fees to the prevailing party if either party requests attorney's fees upon the initiation of the action.

(j) The remedies provided by this section shall be in addition to any other remedies provided by statutory or decisional law.

(k) A lessor does not violate subdivision (c) or (e) by complying with any legal obligation under any federal government program that provides for rent limitations or rental assistance to a qualified tenant.

(l) This section shall remain in effect until October 1, 2021, and as of that date is repealed.

**SEC. 5.** Section 1942.5 of the Civil Code, as amended by Section 6 of Chapter 2 of the Statutes of 2021, is amended to read:

**1942.5.** (a) If the lessor retaliates against the lessee because of the exercise by the lessee of the lessee's rights under this chapter or because of the lessee's complaint to an appropriate agency as to tenantability of a dwelling, and if the lessee of a dwelling is not in default as to the payment of rent, the lessor may not recover possession of a dwelling in any action or proceeding, cause the lessee to quit involuntarily, increase the rent, or decrease any services within 180 days of any of the following:

(1) After the date upon which the lessee, in good faith, has given notice pursuant to Section 1942, has provided notice of a suspected bed bug infestation, or has made an oral complaint to the lessor regarding tenantability.

(2) After the date upon which the lessee, in good faith, has filed a written complaint, or an oral complaint which is registered or otherwise recorded in writing, with an appropriate agency, of which the lessor has notice, for the purpose of obtaining correction of a condition relating to tenantability.

8/5/2021     Bill Text - AB-832 COVID-19 relief: tenancy: federal rental assistance.

Case 2:21-cv-01394-JAM-JDP Document 1 Filed 08/05/21 Page 20 of 52

(3) After the date of an inspection of the premises or dwelling resulting from a complaint described in paragraph (2) of which the lessor did not have notice.

(4) After the filing of appropriate documents commencing a judicial or arbitration proceeding involving the issue of tenantability.

(5) After entry of judgment or the signing of an arbitration award, if any, when in the judicial proceeding or arbitration the issue of tenantability is determined adversely to the lessor.

In each instance, the 180-day period shall run from the latest applicable date referred to in paragraphs (1) to (5), inclusive.

(b) A lessee may not invoke subdivision (a) more than once in any 12-month period.

(c) To report, or to threaten to report, the lessee or individuals known to the landlord to be associated with the lessee to immigration authorities is a form of retaliatory conduct prohibited under subdivision (a). This subdivision shall in no way limit the definition of retaliatory conduct prohibited under this section.

(d) Notwithstanding subdivision (a), it is unlawful for a lessor to increase rent, decrease services, cause a lessee to quit involuntarily, bring an action to recover possession, or threaten to do any of those acts, for the purpose of retaliating against the lessee because the lessee has lawfully organized or participated in a lessees' association or an organization advocating lessees' rights or has lawfully and peaceably exercised any rights under the law. In an action brought by or against the lessee pursuant to this subdivision, the lessee shall bear the burden of producing evidence that the lessor's conduct was, in fact, retaliatory.

(e) To report, or to threaten to report, the lessee or individuals known to the landlord to be associated with the lessee to immigration authorities is a form of retaliatory conduct prohibited under subdivision (d). This subdivision shall in no way limit the definition of retaliatory conduct prohibited under this section.

(f) This section does not limit in any way the exercise by the lessor of the lessor's rights under any lease or agreement or any law pertaining to the hiring of property or the lessor's right to do any of the acts described in subdivision (a) or (d) for any lawful cause. Any waiver by a lessee of the lessee's rights under this section is void as contrary to public policy.

(g) Notwithstanding subdivisions (a) to (f), inclusive, a lessor may recover possession of a dwelling and do any of the other acts described in subdivision (a) within the period or periods prescribed therein, or within subdivision (d), if the notice of termination, rent increase, or other act, and any pleading or statement of issues in an arbitration, if any, states the ground upon which the lessor, in good faith, seeks to recover possession, increase rent, or do any of the other acts described in subdivision (a) or (d). If the statement is controverted, the lessor shall establish its truth at the trial or other hearing.

(h) Any lessor or agent of a lessor who violates this section shall be liable to the lessee in a civil action for all of the following:

(1) The actual damages sustained by the lessee.

(2) Punitive damages in an amount of not less than one hundred dollars ($100) nor more than two thousand dollars ($2,000) for each retaliatory act where the lessor or agent has been guilty of fraud, oppression, or malice with respect to that act.

(i) In any action brought for damages for retaliatory eviction, the court shall award reasonable attorney's fees to the prevailing party if either party requests attorney's fees upon the initiation of the action.

(j) The remedies provided by this section shall be in addition to any other remedies provided by statutory or decisional law.

(k) A lessor does not violate subdivision (c) or (e) by complying with any legal obligation under any federal government program that provides for rent limitations or rental assistance to a qualified tenant.

(l) This section shall become operative on October 1, 2021.

**SEC. 6.** Section 3273.1 of the Civil Code is amended to read:

**3273.1.** For purposes of this title:

Case 2:21-cv-01394-JAM-JDP   Document 1   Filed 08/05/21   Page 21 of 52

(a) (1) "Borrower" means any of the following:

(A) A natural person who is a mortgagor or trustor or a confirmed successor in interest, as defined in Section 1024.31 of Title 12 of the Code of Federal Regulations.

(B) An entity other than a natural person only if the secured property contains no more than four dwelling units and is currently occupied by one or more residential tenants.

(2) "Borrower" shall not include an individual who has surrendered the secured property as evidenced by either a letter confirming the surrender or delivery of the keys to the property to the mortgagee, trustee, beneficiary, or authorized agent.

(3) Unless the property securing the mortgage contains one or more deed-restricted affordable housing units or one or more affordable housing units subject to a regulatory restriction limiting rental rates that is contained in an agreement with a government agency, the following mortgagors shall not be considered a "borrower":

(A) A real estate investment trust, as defined in Section 856 of the Internal Revenue Code.

(B) A corporation.

(C) A limited liability company in which at least one member is a corporation.

(4) "Borrower" shall also mean a person who holds a power of attorney for a borrower described in paragraph (1).

(b) "Effective time period" means the time period between the operational date of this title and December 1, 2021.

(c) (1) "Mortgage servicer" or "lienholder" means a person or entity who directly services a loan or who is responsible for interacting with the borrower, managing the loan account on a daily basis, including collecting and crediting periodic loan payments, managing any escrow account, or enforcing the note and security instrument, either as the current owner of the promissory note or as the current owner's authorized agent.

(2) "Mortgage servicer" or "lienholder" also means a subservicing agent to a master servicer by contract.

(3) "Mortgage servicer" shall not include a trustee, or a trustee's authorized agent, acting under a power of sale pursuant to a deed of trust.

**SEC. 7.** Section 116.223 of the Code of Civil Procedure is amended to read:

**116.223.** (a) The Legislature hereby finds and declares as follows:

(1) There is anticipated to be an unprecedented number of claims arising out of nonpayment of residential rent that occurred between March 1, 2020, and September 30, 2021, related to the COVID-19 pandemic.

(2) These disputes are of special importance to the parties and of significant social and economic consequence collectively as the people of the State of California grapple with the health, economic, and social impacts of the COVID-19 pandemic.

(3) It is essential that the parties have access to a judicial forum to resolve these disputes expeditiously, inexpensively, and fairly.

(4) It is the intent of the Legislature that landlords of residential real property and their tenants have the option to litigate disputes regarding rent which is unpaid for the time period between March 1, 2020, and September 30, 2021, in the small claims court. It is the intent of the Legislature that the jurisdictional limits of the small claims court not apply to these disputes over COVID-19 rental debt.

(b) (1) Notwithstanding paragraph (1) of subdivision (a) Section 116.220, Section 116.221, or any other law, the small claims court has jurisdiction in any action for recovery of COVID-19 rental debt, as defined in Section 1179.02, and any defenses thereto, regardless of the amount demanded.

(2) In an action described in paragraph (1), the court shall reduce the damages awarded for any amount of COVID-19 rental debt sought by payments made to the landlord to satisfy the COVID-19 rental debt, including payments by the tenant, rental assistance programs, or another third party pursuant to paragraph (3) of subdivision (a) of Section 1947.3 of the Civil Code.

(3) An ~~action to recover COVID-19 rental debt, as defined in Section 1179.02, brought pursuant~~ to this subdivision shall not be commenced before November 1, 2021.

(c) Any claim for recovery of COVID-19 rental debt, as defined in Section 1179.02, shall not be subject to Section 116.231, notwithstanding the fact that a landlord of residential rental property may have brought two or more small claims actions in which the amount demanded exceeded two thousand five hundred dollars ($2,500) in any calendar year.

(d) This section shall remain in effect until October 1, 2025, and as of that date is repealed.

**SEC. 8.** Section 871.10 of the Code of Civil Procedure is amended to read:

**871.10.** (a) In any action seeking recovery of COVID-19 rental debt, as defined in Section 1179.02, the plaintiff shall, in addition to any other requirements provided by law, attach to the complaint documentation showing that the plaintiff has made a good faith effort to investigate whether governmental rental assistance is available to the tenant, seek governmental rental assistance for the tenant, or cooperate with the tenant's efforts to obtain rental assistance from any governmental entity, or other third party pursuant to paragraph (3) of subdivision (a) of Section 1947.3 of the Civil Code.

(b) In an action subject to subdivision (a), the court may reduce the damages awarded for any amount of COVID-19 rental debt, as defined in Section 1179.02, sought if the court determines that the landlord refused to obtain rental assistance from the state rental assistance program created pursuant to Chapter 17 (commencing with Section 50897) of Part 2 of Division 31 of the Health and Safety Code, if the tenant met the eligibility requirements and funding was available.

(c) An action to recover COVID-19 rental debt, as defined in Section 1179.02, that is subject to this section shall not be commenced before November 1, 2021.

(d) Subdivisions (a) through (c), inclusive, shall not apply to an action to recover COVID-19 rental debt, as defined in Section 1179.02, that was pending before the court as of January 29, 2021.

(e) Except as provided in subdivision (g), any action to recover COVID-19 rental debt, as defined in Section 1179.02, that is subject to this section and is pending before the court as of January 29, 2021, shall be stayed until November 1, 2021.

(f) This section shall not apply to any unlawful detainer action to recover possession pursuant to Section 1161.

(g) (1) Actions for breach of contract to recover rental debt that were filed before October 1, 2020, shall not be stayed and may proceed.

(2) This subdivision does not apply to actions filed against any person who would have qualified under the rental assistance funding provided through the Secretary of the Treasury pursuant to Section 501 of Subtitle A of Title V of Division N of the federal Consolidated Appropriations Act, 2021 (Public Law 116-260) if the person's household income is at or below 80 percent of the area median income for the 2020 or 2021 calendar year.

**SEC. 9.** Section 871.11 of the Code of Civil Procedure is amended to read:

**871.11.** (a) Notwithstanding any other law, in any action to recover COVID-19 rental debt, as defined in Section 1179.02, brought as a limited or unlimited civil case, the court shall not, under ordinary circumstances, award reasonable attorneys' fees to a prevailing party that exceed the following amounts:

(1) If the matter is uncontested, five hundred dollars ($500).

(2) If the matter is contested, one thousand dollars ($1,000).

(b) In determining whether a case was litigated under ordinary circumstances, the court may consider the following:

(1) The number and complexity of pretrial and posttrial motions.

(2) The nature and extent of any discovery performed.

(3) Whether the case was tried by jury or by the court.

(4) The length of the trial.

(5) Any other factor the court, in its discretion, finds relevant, including whether the tenant or the landlord, or both the tenant and the landlord, would have been eligible to receive a rental assistance payment from the governmental entity, or other third party pursuant to paragraph (3) of subdivision (a) of Section 1947.3 of the Civil Code.

(c) Nothing in this section shall be interpreted to entitle the prevailing party to an award of reasonable attorneys' fees if that award is not otherwise provided for by law or agreement.

(d) This section shall remain in effect until October 1, 2025, and as of that date is repealed.

**SEC. 10.** Section 871.12 of the Code of Civil Procedure is amended to read:

**871.12.** This chapter shall remain in effect until October 1, 2027, and as of the date is repealed.

**SEC. 11.** Section 1161.2 of the Code of Civil Procedure, as amended by Section 11 of Chapter 2 of the Statutes of 2021, is amended to read:

**1161.2.** (a) (1) The clerk shall allow access to limited civil case records filed under this chapter, including the court file, index, and register of actions, only as follows:

(A) To a party to the action, including a party's attorney.

(B) To a person who provides the clerk with the names of at least one plaintiff and one defendant and the address of the premises, including the apartment or unit number, if any.

(C) To a resident of the premises who provides the clerk with the name of one of the parties or the case number and shows proof of residency.

(D) To a person by order of the court, which may be granted ex parte, on a showing of good cause.

(E) Except as provided in subparagraph (G), to any person by order of the court if judgment is entered for the plaintiff after trial more than 60 days since the filing of the complaint. The court shall issue the order upon issuing judgment for the plaintiff.

(F) Except as provided in subparagraph (G), to any other person 60 days after the complaint has been filed if the plaintiff prevails in the action within 60 days of the filing of the complaint, in which case the clerk shall allow access to any court records in the action. If a default or default judgment is set aside more than 60 days after the complaint has been filed, this section shall apply as if the complaint had been filed on the date the default or default judgment is set aside.

(G) (i) In the case of a complaint involving residential property based on Section 1161a as indicated in the caption of the complaint, as required in subdivision (c) of Section 1166, to any other person, if 60 days have elapsed since the complaint was filed with the court, and, as of that date, judgment against all defendants has been entered for the plaintiff, after a trial.

(ii) Subparagraphs (E) and (F) shall not apply if the plaintiff filed the action between March 4, 2020, and September 30, 2021, and the action is based on an alleged default in the payment of rent.

(2) This section shall not be construed to prohibit the court from issuing an order that bars access to the court record in an action filed under this chapter if the parties to the action so stipulate.

(b) (1) For purposes of this section, "good cause" includes, but is not limited to, both of the following:

(A) The gathering of newsworthy facts by a person described in Section 1070 of the Evidence Code.

(B) The gathering of evidence by a party to an unlawful detainer action solely for the purpose of making a request for judicial notice pursuant to subdivision (d) of Section 452 of the Evidence Code.

(2) It is the intent of the Legislature that a simple procedure be established to request the ex parte order described in subparagraph (D) of paragraph (1) of subdivision (a).

(c) Upon the filing of a case so restricted, the court clerk shall mail notice to each defendant named in the action. The notice shall be mailed to the address provided in the complaint. The notice shall contain a statement that an unlawful detainer complaint (eviction action) has been filed naming that party as a defendant, and that access to the court file will be delayed for 60 days except to a party, an attorney for one of the parties, or any

Case 2:21-cv-01394-JAM-JDP   Document 1   Filed 08/05/21   Page 24 of 52

other person who (1) provides to the clerk the name of at least one plaintiff and one defendant in the action and provides to the clerk the address, including any applicable apartment, unit, or space number, of the subject premises, or (2) provides to the clerk the name of one of the parties in the action or the case number and can establish through proper identification that the person lives at the subject premises. The notice shall also contain a statement that access to the court index, register of actions, or other records is not permitted until 60 days after the complaint is filed, except pursuant to an order upon a showing of good cause for access. The notice shall contain on its face the following information:

(1) The name and telephone number of the county bar association.

(2) The name and telephone number of any entity that requests inclusion on the notice and demonstrates to the satisfaction of the court that it has been certified by the State Bar of California as a lawyer referral service and maintains a panel of attorneys qualified in the practice of landlord-tenant law pursuant to the minimum standards for a lawyer referral service established by the State Bar of California and Section 6155 of the Business and Professions Code.

(3) The following statement:

"The State Bar of California certifies lawyer referral services in California and publishes a list of certified lawyer referral services organized by county. To locate a lawyer referral service in your county, go to the State Bar's internet website at www.calbar.ca.gov or call 1-866-442-2529."

(4) The name and telephone number of an office or offices funded by the federal Legal Services Corporation or qualified legal services projects that receive funds distributed pursuant to Section 6216 of the Business and Professions Code that provide legal services to low-income persons in the county in which the action is filed. The notice shall state that these telephone numbers may be called for legal advice regarding the case. The notice shall be issued between 24 and 48 hours of the filing of the complaint, excluding weekends and holidays. One copy of the notice shall be addressed to "all occupants" and mailed separately to the subject premises. The notice shall not constitute service of the summons and complaint.

(5) The following statement, for a notice sent out pursuant to this section between October 1, 2021 and March 31, 2022:

"IMPORTANT NOTICE FROM THE STATE OF CALIFORNIA – YOU MUST TAKE ACTION TO AVOID AN EVICTION: As part of the state's COVID-19 relief plan, money has been set aside to help renters who have fallen behind on rent or utility payments.

If you are behind on rent or utility payments, YOU SHOULD COMPLETE A RENTAL ASSISTANCE APPLICATION IMMEDIATELY! It is free and simple to apply. Citizenship or immigration status does not matter.

You can find out how to start your application by calling 1-833-430-2122 or visiting http://housingiskey.com right away."

(d) Notwithstanding any other law, the court shall charge an additional fee of fifteen dollars ($15) for filing a first appearance by the plaintiff. This fee shall be added to the uniform filing fee for actions filed under this chapter.

(e) This section does not apply to a case that seeks to terminate a mobilehome park tenancy if the statement of the character of the proceeding in the caption of the complaint clearly indicates that the complaint seeks termination of a mobilehome park tenancy.

(f) This section does not alter any provision of the Evidence Code.

**SEC. 12.** Section 1161.2 of the Code of Civil Procedure, as amended by Section 12 of Chapter 2 of the Statutes of 2021, is repealed.

**SEC. 13.** Section 1161.2.5 of the Code of Civil Procedure is amended to read:

**1161.2.5.** (a) (1) Except as provided in Section 1161.2, the clerk shall allow access to civil case records for actions seeking recovery of COVID-19 rental debt, as defined in Section 1179.02, including the court file, index, and register of actions, only as follows:

(A) To a party to the action, including a party's attorney.

(B) To a person who provides the clerk with the names of at least one plaintiff and one defendant.

(C) To a resident of the premises for which the COVID-19 rental debt is owed who provides the clerk with the name of one of the parties or the case number and shows proof of residency.

(D) To a person by order of the court, which may be granted ex parte, on a showing of good cause.

(2) To give the court notice that access to the records in an action is limited, any complaint or responsive pleading in a case subject to this section shall include on either the first page of the pleading or a cover page, the phrase "ACTION FOR RECOVERY OF COVID-19 RENTAL DEBT AS DEFINED UNDER SECTION 1179.02" in bold, capital letters, in 12 point or larger font.

(3) The Judicial Council shall develop forms for parties to utilize in actions brought pursuant to Section 116.223 and in civil actions for recovery of COVID-19 rental debt as defined in Section 1179.02. The forms shall provide prominent notice on the first page that access to the records in the case is limited pursuant to this section.

(b) (1) For purposes of this section, "good cause" includes, but is not limited to, both of the following:

(A) The gathering of newsworthy facts by a person described in Section 1070 of the Evidence Code.

(B) The gathering of evidence by a party to a civil action solely for the purpose of making a request for judicial notice pursuant to subdivision (d) of Section 452 of the Evidence Code.

(2) It is the intent of the Legislature that a simple procedure be established to request the ex parte order described in subparagraph (D) of paragraph (1) of subdivision (a).

(c) This section does not alter any provision of the Evidence Code.

**SEC. 14.** Section 1179.02 of the Code of Civil Procedure is amended to read:

**1179.02.** For purposes of this chapter:

(a) "Covered time period" means the time period between March 1, 2020, and September 30, 2021.

(b) "COVID-19-related financial distress" means any of the following:

(1) Loss of income caused by the COVID-19 pandemic.

(2) Increased out-of-pocket expenses directly related to performing essential work during the COVID-19 pandemic.

(3) Increased expenses directly related to the health impact of the COVID-19 pandemic.

(4) Childcare responsibilities or responsibilities to care for an elderly, disabled, or sick family member directly related to the COVID-19 pandemic that limit a tenant's ability to earn income.

(5) Increased costs for childcare or attending to an elderly, disabled, or sick family member directly related to the COVID-19 pandemic.

(6) Other circumstances related to the COVID-19 pandemic that have reduced a tenant's income or increased a tenant's expenses.

(c) "COVID-19 rental debt" means unpaid rent or any other unpaid financial obligation of a tenant under the tenancy that came due during the covered time period.

(d) "Declaration of COVID-19-related financial distress" means the following written statement:

I am currently unable to pay my rent or other financial obligations under the lease in full because of one or more of the following:

1. Loss of income caused by the COVID-19 pandemic.

2. Increased out-of-pocket expenses directly related to performing essential work during the COVID-19 pandemic.

8/5/2021 Bill Text - AB-832 COVID-19 relief: tenancy: federal rental assistance.

Case 2:21-cv-01394-JAM-JDP   Document 1   Filed 08/05/21   Page 26 of 52

3. Increased expenses directly related to health impacts of the COVID-19 pandemic.

4. Childcare responsibilities or responsibilities to care for an elderly, disabled, or sick family member directly related to the COVID-19 pandemic that limit my ability to earn income.

5. Increased costs for childcare or attending to an elderly, disabled, or sick family member directly related to the COVID-19 pandemic.

6. Other circumstances related to the COVID-19 pandemic that have reduced my income or increased my expenses.

Any public assistance, including unemployment insurance, pandemic unemployment assistance, state disability insurance (SDI), or paid family leave, that I have received since the start of the COVID-19 pandemic does not fully make up for my loss of income and/or increased expenses.

Signed under penalty of perjury:

Dated:

(e) "Landlord" includes all of the following or the agent of any of the following:

(1) An owner of residential real property.

(2) An owner of a residential rental unit.

(3) An owner of a mobilehome park.

(4) An owner of a mobilehome park space or lot.

(f) "Protected time period" means the time period between March 1, 2020, and August 31, 2020.

(g) "Rental payment" means rent or any other financial obligation of a tenant under the tenancy.

(h) "Tenant" means any natural person who hires real property except any of the following:

(1) Tenants of commercial property, as defined in subdivision (c) of Section 1162 of the Civil Code.

(2) Those persons whose occupancy is described in subdivision (b) of Section 1940 of the Civil Code.

(i) "Transition time period" means the time period between September 1, 2020, and September 30, 2021.

**SEC. 15.** Section 1179.03 of the Code of Civil Procedure is amended to read:

**1179.03.** (a) (1) Any notice that demands payment of COVID-19 rental debt served pursuant to subdivision (e) of Section 798.56 of the Civil Code or paragraph (2) or (3) of Section 1161 shall be modified as required by this section. A notice which does not meet the requirements of this section, regardless of when the notice was issued, shall not be sufficient to establish a cause of action for unlawful detainer or a basis for default judgment.

(2) Any case based solely on a notice that demands payment of COVID-19 rental debt served pursuant to subdivision (e) of Section 798.56 of the Civil Code or paragraph (2) or (3) of Section 1161 may be dismissed if the notice does not meet the requirements of this section, regardless of when the notice was issued.

(3) Notwithstanding paragraphs (1) and (2), this section shall have no effect if the landlord lawfully regained possession of the property or obtained a judgment for possession of the property before the operative date of this section.

(b) If the notice demands payment of rent that came due during the protected time period, as defined in Section 1179.02, the notice shall comply with all of the following:

(1) The time period in which the tenant may pay the amount due or deliver possession of the property shall be no shorter than 15 days, excluding Saturdays, Sundays, and other judicial holidays.

(2) The notice shall set forth the amount of rent demanded and the date each amount became due.

(3) The notice shall advise the tenant that the tenant cannot be evicted for failure to comply with the notice if the tenant delivers a signed declaration of COVID-19-related financial distress to the landlord on or before the

date that the notice to pay rent or quit or notice to perform covenants or quit expires, by any of the methods specified in subdivision (f).

(4) The notice shall include the following text in at least 12-point font:

"NOTICE FROM THE STATE OF CALIFORNIA: If you are unable to pay the amount demanded in this notice, and have decreased income or increased expenses due to COVID-19, your landlord will not be able to evict you for this missed payment if you sign and deliver the declaration form included with your notice to your landlord within 15 days, excluding Saturdays, Sundays, and other judicial holidays, but you will still owe this money to your landlord. If you do not sign and deliver the declaration within this time period, you may lose the eviction protections available to you. You must return this form to be protected. You should keep a copy or picture of the signed form for your records.

You will still owe this money to your landlord and can be sued for the money, but you cannot be evicted from your home if you comply with these requirements. You should keep careful track of what you have paid and any amount you still owe to protect your rights and avoid future disputes. Failure to respond to this notice may result in an unlawful detainer action (eviction) being filed against you.

For information about legal resources that may be available to you, visit lawhelpca.org."

(c) If the notice demands payment of rent that came due during the transition time period, as defined in Section 1179.02, the notice shall comply with all of the following:

(1) The time period in which the tenant may pay the amount due or deliver possession of the property shall be no shorter than 15 days, excluding Saturdays, Sundays, and other judicial holidays.

(2) The notice shall set forth the amount of rent demanded and the date each amount became due.

(3) The notice shall advise the tenant that the tenant will not be evicted for failure to comply with the notice, except as allowed by this chapter, if the tenant delivers a signed declaration of COVID-19-related financial distress to the landlord on or before the date the notice to pay rent or quit or notice to perform covenants or quit expires, by any of the methods specified in subdivision (f).

(4)  For notices served before February 1, 2021, the notice shall include the following text in at least 12-point type:

"NOTICE FROM THE STATE OF CALIFORNIA: If you are unable to pay the amount demanded in this notice, and have decreased income or increased expenses due to COVID-19, you may sign and deliver the declaration form included with your notice to your landlord within 15 days, excluding Saturdays, Sundays, and other judicial holidays, and your landlord will not be able to evict you for this missed payment so long as you make the minimum payment (see below). You will still owe this money to your landlord. You should keep a copy or picture of the signed form for your records.

If you provide the declaration form to your landlord as described above AND, on or before January 31, 2021, you pay an amount that equals at least 25 percent of each rental payment that came due or will come due during the period between September 1, 2020, and January 31, 2021, that you were unable to pay as a result of decreased income or increased expenses due to COVID-19, your landlord cannot evict you. Your landlord may require you to submit a new declaration form for each rental payment that you do not pay that comes due between September 1, 2020, and January 31, 2021.

For example, if you provided a declaration form to your landlord regarding your decreased income or increased expenses due to COVID-19 that prevented you from making your rental payment in September and October of 2020, your landlord could not evict you if, on or before January 31, 2021, you made a payment equal to 25 percent of September's and October's rental payment (i.e., half a month's rent). If you were unable to pay any of the rental payments that came due between September 1, 2020, and January 31, 2021, and you provided your landlord with the declarations in response to each 15-day notice your landlord sent to you during that time period, your landlord could not evict you if, on or before January 31, 2021, you paid your landlord an amount equal to 25 percent of all the rental payments due from September through January (i.e., one and a quarter month's rent).

You will still owe the full amount of the rent to your landlord, but you cannot be evicted from your home if you comply with these requirements. You should keep careful track of what you have paid and any amount you still owe to protect your rights and avoid future disputes. Failure to respond to this notice may result in an unlawful detainer action (eviction) being filed against you.

8/5/2021                                     Bill Text - AB-832 COVID-19 relief: tenancy: federal rental assistance.

Case 2:21-cv-01394-JAM-JDP   Document 1   Filed 08/05/21   Page 28 of 52

For information about legal resources that may be available to you, visit lawhelpca.org."

(5) For notices served on or after February 1, 2021, and before July 1, 2021, the notice shall include the following text in at least 12-point type:

"NOTICE FROM THE STATE OF CALIFORNIA: If you are unable to pay the amount demanded in this notice, and have decreased income or increased expenses due to COVID-19, you may sign and deliver the declaration form included with your notice to your landlord within 15 days, excluding Saturdays, Sundays, and other judicial holidays, and your landlord will not be able to evict you for this missed payment so long as you make the minimum payment (see below). You will still owe this money to your landlord. You should keep a copy or picture of the signed form for your records.

If you provide the declaration form to your landlord as described above AND, on or before June 30, 2021, you pay an amount that equals at least 25 percent of each rental payment that came due or will come due during the period between September 1, 2020, and June 30, 2021, that you were unable to pay as a result of decreased income or increased expenses due to COVID-19, your landlord cannot evict you. Your landlord may require you to submit a new declaration form for each rental payment that you do not pay that comes due between September 1, 2020, and June 30, 2021.

If you were unable to pay any of the rental payments that came due between September 1, 2020, and June 30, 2021, and you provided your landlord with the declarations in response to each 15-day notice your landlord sent to you during that time period, your landlord could not evict you if, on or before June 30, 2021, you paid your landlord an amount equal to 25 percent of all the rental payments due from September 2020 through June 2021.

You will still owe the full amount of the rent to your landlord, but you cannot be evicted from your home if you comply with these requirements. You should keep careful track of what you have paid and any amount you still owe to protect your rights and avoid future disputes. Failure to respond to this notice may result in an unlawful detainer action (eviction) being filed against you.

YOU MAY QUALIFY FOR RENTAL ASSISTANCE. In addition to extending these eviction protections, the State of California, in partnership with federal and local governments, has created an emergency rental assistance program to assist renters who have been unable to pay their rent and utility bills as a result of the COVID-19 pandemic. This program may be able to help you get caught up with past-due rent. Additionally, depending on the availability of funds, the program may also be able to assist you with making future rental payments.

While not everyone will qualify for this assistance, you can apply for it regardless of your citizenship or immigration status. There is no charge to apply for or receive this assistance.

Additional information about the extension of the COVID-19 Tenant Relief Act and new state or local rental assistance programs, including more information about how to qualify for assistance, can be found by visiting http://housingiskey.com or by calling 1-833-422-4255.

(6) For notices served on or after July 1, 2021, the notice shall include the following text in at least 12-point type:

NOTICE FROM THE STATE OF CALIFORNIA – YOU MUST TAKE ACTION TO AVOID EVICTION. If you are unable to pay the amount demanded in this notice because of the COVID-19 pandemic, you should take action right away.

IMMEDIATELY: Sign and return the declaration form included with your notice to your landlord within 15 days, excluding Saturdays, Sundays, and other judicial holidays. Sign and return the declaration even if you have done this before. You should keep a copy or a picture of the signed form for your records.

BEFORE SEPTEMBER 30, 2021: Pay your landlord at least 25 percent of any rent you missed between September 1, 2020, and September 30, 2021. If you need help paying that amount, apply for rental assistance. You will still owe the rest of the rent to your landlord, but as long as you pay 25 percent by September 30, 2021, your landlord will not be able to evict you for failing to pay the rest of the rent. You should keep careful track of what you have paid and any amount you still owe to protect your rights and avoid future disputes.

AS SOON AS POSSIBLE: Apply for rental assistance! As part of California's COVID-19 relief plan, money has been set aside to help renters who have fallen behind on rent or utility payments. If you are behind on rent or utility payments, YOU SHOULD COMPLETE A RENTAL ASSISTANCE APPLICATION IMMEDIATELY! It is free and simple to

apply. ... relationship or immigration status does not matter. You can find out how to start your application by calling 1-833-430-2122 or visiting http://housingiskey.com right away.

(d) An unsigned copy of a declaration of COVID-19-related financial distress shall accompany each notice delivered to a tenant to which subdivision (b) or (c) is applicable. If the landlord was required, pursuant to Section 1632 of the Civil Code, to provide a translation of the rental contract or agreement in the language in which the contract or agreement was negotiated, the landlord shall also provide the unsigned copy of a declaration of COVID-19-related financial distress to the tenant in the language in which the contract or agreement was negotiated. The Department of Housing and Community Development shall make available an official translation of the text required by paragraph (4) of subdivision (b) and paragraphs (4) to (6), inclusive, of subdivision (c) in the languages specified in Section 1632 of the Civil Code by no later than July 15, 2021.

(e) If a tenant owes a COVID-19 rental debt to which both subdivisions (b) and (c) apply, the landlord shall serve two separate notices that comply with subdivisions (b) and (c), respectively.

(f) A tenant may deliver the declaration of COVID-19-related financial distress to the landlord by any of the following methods:

(1) In person, if the landlord indicates in the notice an address at which the declaration may be delivered in person.

(2) By electronic transmission, if the landlord indicates an email address in the notice to which the declaration may be delivered.

(3) Through United States mail to the address indicated by the landlord in the notice. If the landlord does not provide an address pursuant to subparagraph (1), then it shall be conclusively presumed that upon the mailing of the declaration by the tenant to the address provided by the landlord, the declaration is deemed received by the landlord on the date posted, if the tenant can show proof of mailing to the address provided by the landlord.

(4) Through any of the same methods that the tenant can use to deliver the payment pursuant to the notice if delivery of the declaration by that method is possible.

(g) Except as provided in Section 1179.02.5, the following shall apply to a tenant who, within 15 days of service of the notice specified in subdivision (b) or (c), excluding Saturdays, Sundays, and other judicial holidays, demanding payment of COVID-19 rental debt delivers a declaration of COVID-19-related financial distress to the landlord by any of the methods provided in subdivision (f):

(1) With respect to a notice served pursuant to subdivision (b), the tenant shall not then or thereafter be deemed to be in default with regard to that COVID-19 rental debt for purposes of subdivision (e) of Section 798.56 of the Civil Code or paragraphs (2) and (3) of Section 1161.

(2) With respect to a notice served pursuant to subdivision (c), the following shall apply:

(A) Except as provided by subparagraph (B), the landlord may not initiate an unlawful detainer action before October 1, 2021.

(B) A tenant shall not be guilty of unlawful detainer, now or in the future, based upon nonpayment of COVID-19 rental debt that came due during the transition period if, on or before September 30, 2021, the tenant tenders one or more payments that, when taken together, are of an amount equal to or not less than 25 percent of each transition period rental payment demanded in one or more notices served pursuant to subdivision (c) and for which the tenant complied with this subdivision by timely delivering a declaration of COVID-19-related financial distress to the landlord.

(h) (1) (A) Within the time prescribed in Section 1167, a tenant shall be permitted to file a signed declaration of COVID-19-related financial distress with the court.

(B) If the tenant files a signed declaration of COVID-19-related financial distress with the court pursuant to this subdivision, the court shall dismiss the case, pursuant to paragraph (2), if the court finds, after a noticed hearing on the matter, that the tenant's failure to return a declaration of COVID-19-related financial distress within the time required by subdivision (g) was the result of mistake, inadvertence, surprise, or excusable neglect, as those terms have been interpreted under subdivision (b) of Section 473.

Case 2:21-cv-01394-JAM-JDP Document 1 Filed 08/05/21 Page 30 of 52

(C) The notice hearing required by this paragraph shall be held with not less than 5 days' notice and not more than 10 days' notice, to be given by the court, and may be held separately or in conjunction with any regularly noticed hearing in the case, other than a trial.

(2) If the court dismisses the case pursuant to paragraph (1), that dismissal shall be without prejudice as follows:

(A) If the case was based in whole or in part upon a notice served pursuant to subdivision (b), the court shall dismiss any cause of action based on the notice served pursuant to subdivision (b).

(B) Before October 1, 2021, if the case is based in whole or in part on a notice served pursuant to subdivision (c), the court shall dismiss any cause of action based on the notice served pursuant to subdivision (c).

(C) On or after October 1, 2021, if the case is based in whole or in part on a notice served pursuant to subdivision (c), the court shall dismiss any cause of action based upon the notice served pursuant to subdivision (c) if the tenant, within five days of the court's order to do so, makes the payment required by subparagraph (B) of paragraph (2) of subdivision (g), provided that if the fifth day falls on a Saturday, Sunday, or judicial holiday the last day to pay shall be extended to the next court day.

(3) If the court dismisses the case pursuant to this subdivision, the tenant shall not be considered the prevailing party for purposes of Section 1032, any attorney's fee provision appearing in contract or statute, or any other law.

(i) Notwithstanding any other law, a notice which is served pursuant to subdivision (b) or (c) that complies with the requirements of this chapter and subdivision (e) of Section 798.56 of the Civil Code or paragraphs (2) and (3) of Section 1161, as applicable, need not include specific language required by any ordinance, resolution, regulation, or administrative action adopted by a city, county, or city and county.

**SEC. 16.** Section 1179.03.5 of the Code of Civil Procedure is amended to read:

**1179.03.5.** (a) Before October 1, 2021, a court may not find a tenant guilty of an unlawful detainer unless it finds that one of the following applies:

(1) The tenant was guilty of the unlawful detainer before March 1, 2020.

(2) In response to service of a notice demanding payment of COVID-19 rental debt pursuant to subdivision (e) of Section 798.56 of the Civil Code or paragraph (2) or (3) of Section 1161, the tenant failed to comply with the requirements of Section 1179.03.

(3) (A) The unlawful detainer arises because of a termination of tenancy for any of the following:

(i) An at-fault just cause, as defined in paragraph (1) of subdivision (b) of Section 1946.2 of the Civil Code.

(ii) (I) A no-fault just cause, as defined in paragraph (2) of subdivision (b) of Section 1946.2 of the Civil Code, other than intent to demolish or to substantially remodel the residential real property, as defined in subparagraph (D) of paragraph (2) of subdivision (b) of Section 1946.2.

(II) Notwithstanding subclause (I), termination of a tenancy based on intent to demolish or to substantially remodel the residential real property shall be permitted if necessary to maintain compliance with the requirements of Section 1941.1 of the Civil Code, Section 17920.3 or 17920.10 of the Health and Safety Code, or any other applicable law governing the habitability of residential rental units.

(iii) The owner of the property has entered into a contract for the sale of that property with a buyer who intends to occupy the property, and all the requirements of paragraph (8) of subdivision (e) of Section 1946.2 of the Civil Code have been satisfied.

(B) In an action under this paragraph, other than an action to which paragraph (2) also applies, the landlord shall be precluded from recovering COVID-19 rental debt in connection with any award of damages.

(b) (1) This section does not require a landlord to assist the tenant to relocate through the payment of relocation costs if the landlord would not otherwise be required to do so pursuant to Section 1946.2 of the Civil Code or any other law.

(2) A landlord who is required to assist the tenant to relocate pursuant to Section 1946.2 of the Civil Code or any other law, may offset the tenant's COVID-19 rental debt against their obligation to assist the tenant to relocate.

SEC. 12. Section 1179.04 is added to the Code of Civil Procedure, to read:

**1179.04.** (a) On or before September 30, 2020, a landlord shall provide, in at least 12-point type, the following notice to tenants who, as of September 1, 2020, have not paid one or more rental payments that came due during the protected time period:

"NOTICE FROM THE STATE OF CALIFORNIA: The California Legislature has enacted the COVID-19 Tenant Relief Act of 2020 which protects renters who have experienced COVID-19-related financial distress from being evicted for failing to make rental payments due between March 1, 2020, and January 31, 2021.

"COVID-19-related financial distress" means any of the following:

1. Loss of income caused by the COVID-19 pandemic.

2. Increased out-of-pocket expenses directly related to performing essential work during the COVID-19 pandemic.

3. Increased expenses directly related to the health impact of the COVID-19 pandemic.

4. Childcare responsibilities or responsibilities to care for an elderly, disabled, or sick family member directly related to the COVID-19 pandemic that limit your ability to earn income.

5. Increased costs for childcare or attending to an elderly, disabled, or sick family member directly related to the COVID-19 pandemic.

6. Other circumstances related to the COVID-19 pandemic that have reduced your income or increased your expenses.

This law gives you the following protections:

1. If you failed to make rental payments due between March 1, 2020, and August 31, 2020, because you had decreased income or increased expenses due to the COVID-19 pandemic, as described above, you cannot be evicted based on this nonpayment.

2. If you are unable to pay rental payments that come due between September 1, 2020, and January 31, 2021, because of decreased income or increased expenses due to the COVID-19 pandemic, as described above, you cannot be evicted if you pay 25 percent of the rental payments missed during that time period on or before January 31, 2021.

You must provide, to your landlord, a declaration under penalty of perjury of your COVID-19-related financial distress attesting to the decreased income or increased expenses due to the COVID-19 pandemic to be protected by the eviction limitations described above. Before your landlord can seek to evict you for failing to make a payment that came due between March 1, 2020, and January 31, 2021, your landlord will be required to give you a 15-day notice that informs you of the amounts owed and includes a blank declaration form you can use to comply with this requirement.

If your landlord has proof of income on file which indicates that your household makes at least 130 percent of the median income for the county where the rental property is located, as published by the Department of Housing and Community Development in the Official State Income Limits for 2020, your landlord may also require you to provide documentation which shows that you have experienced a decrease in income or increase in expenses due to the COVID-19 pandemic. Your landlord must tell you in the 15-day notice whether your landlord is requiring that documentation. Any form of objectively verifiable documentation that demonstrates the financial impact you have experienced is sufficient, including a letter from your employer, an unemployment insurance record, or medical bills, and may be provided to satisfy the documentation requirement.

It is very important you do not ignore a 15-day notice to pay rent or quit or a notice to perform covenants or quit from your landlord. If you are served with a 15-day notice and do not provide the declaration form to your landlord before the 15-day notice expires, you could be evicted. You could also be evicted beginning February 1, 2021, if you owe rental payments due between September 1, 2020, and January 31, 2021, and you do not pay an amount equal to at least 25 percent of the payments missed for that time period.

For information about legal resources that may be available to you, visit lawhelpca.org."

(b) On or before February 28, 2021, a landlord shall provide, in at least 8-point type, the following notice to tenants who, as of February 1, 2021, have not paid one or more rental payments that came due during the covered time period:

"NOTICE FROM THE STATE OF CALIFORNIA: The California Legislature has enacted the COVID-19 Tenant Relief Act which protects renters who have experienced COVID-19-related financial distress from being evicted for failing to make rental payments due between March 1, 2020, and June 30, 2021.

"COVID-19-related financial distress" means any of the following:

1. Loss of income caused by the COVID-19 pandemic.

2. Increased out-of-pocket expenses directly related to performing essential work during the COVID-19 pandemic.

3. Increased expenses directly related to the health impact of the COVID-19 pandemic.

4. Childcare responsibilities or responsibilities to care for an elderly, disabled, or sick family member directly related to the COVID-19 pandemic that limit your ability to earn income.

5. Increased costs for childcare or attending to an elderly, disabled, or sick family member directly related to the COVID-19 pandemic.

6. Other circumstances related to the COVID-19 pandemic that have reduced your income or increased your expenses.

This law gives you the following protections:

1. If you failed to make rental payments due between March 1, 2020, and August 31, 2020, because you had decreased income or increased expenses due to the COVID-19 pandemic, as described above, you cannot be evicted based on this nonpayment.

2. If you are unable to pay rental payments that come due between September 1, 2020, and June 30, 2021, because of decreased income or increased expenses due to the COVID-19 pandemic, as described above, you cannot be evicted if you pay 25 percent of the rental payments missed during that time period on or before June 30, 2021.

You must provide, to your landlord, a declaration under penalty of perjury of your COVID-19-related financial distress attesting to the decreased income or increased expenses due to the COVID-19 pandemic to be protected by the eviction limitations described above. Before your landlord can seek to evict you for failing to make a payment that came due between March 1, 2020, and June 30, 2021, your landlord will be required to give you a 15-day notice that informs you of the amounts owed and includes a blank declaration form you can use to comply with this requirement.

If your landlord has proof of income on file which indicates that your household makes at least 130 percent of the median income for the county where the rental property is located, as published by the Department of Housing and Community Development in the Official State Income Limits for 2020, your landlord may also require you to provide documentation which shows that you have experienced a decrease in income or increase in expenses due to the COVID-19 pandemic. Your landlord must tell you in the 15-day notice whether your landlord is requiring that documentation. Any form of objectively verifiable documentation that demonstrates the financial impact you have experienced is sufficient, including a letter from your employer, an unemployment insurance record, or medical bills, and may be provided to satisfy the documentation requirement.

It is very important you do not ignore a 15-day notice to pay rent or quit or a notice to perform covenants or quit from your landlord. If you are served with a 15-day notice and do not provide the declaration form to your landlord before the 15-day notice expires, you could be evicted. You could also be evicted beginning July 1, 2021 if you owe rental payments due between September 1, 2020, and June 30, 2021, and you do not pay an amount equal to at least 25 percent of the payments missed for that time period.

YOU MAY QUALIFY FOR RENTAL ASSISTANCE. In addition to extending these eviction protections, the State of California, in partnership with federal and local governments, has created an emergency rental assistance program to assist renters who have been unable to pay their rent and utility bills as a result of the COVID-19 pandemic. This program may be able to help you get caught up with past-due rent. Additionally, depending on the availability of funds, the program may also be able to assist you with making future rental payments.

Case 2:21-cv-01394-JAM-JDP Document 1 Filed 08/05/21 Page 33 of 52

While not everyone will qualify for this assistance, you can apply to see if you are eligible, regardless of your citizenship or immigration status. There is no charge to apply for or receive this assistance.

Additional information about the extension of the COVID-19 Tenant Relief Act and new state or local rental assistance programs, including more information about how to qualify for assistance, can be found by visiting http://housingiskey.com or by calling 1-833-422-4255."

(c) On or before July 31, 2021, a landlord shall provide, in at least 12-point type, the following notice to tenants who, as of July 1, 2021, have not paid one or more rental payments that came due during the covered time period:

"NOTICE FROM THE STATE OF CALIFORNIA: The California Legislature has extended the COVID-19 Tenant Relief Act. The law now protects renters who have experienced COVID-19-related financial distress from being evicted for failing to make rental payments due between March 1, 2020, and September 30, 2021.

"COVID-19-related financial distress" means any of the following:

1. Loss of income caused by the COVID-19 pandemic.

2. Increased out-of-pocket expenses directly related to performing essential work during the COVID-19 pandemic.

3. Increased expenses directly related to the health impact of the COVID-19 pandemic.

4. Childcare responsibilities or responsibilities to care for an elderly, disabled, or sick family member directly related to the COVID-19 pandemic that limit your ability to earn income.

5. Increased costs for childcare or attending to an elderly, disabled, or sick family member directly related to the COVID-19 pandemic.

6. Other circumstances related to the COVID-19 pandemic that have reduced your income or increased your expenses.

This law gives you the following protections:

1. If you failed to make rental payments due between March 1, 2020, and August 31, 2020, because you had decreased income or increased expenses due to the COVID-19 pandemic, as described above, you cannot be evicted based on this nonpayment.

2. If you are unable to pay rental payments that come due between September 1, 2020, and September 30, 2021, because of decreased income or increased expenses due to the COVID-19 pandemic, as described above, you cannot be evicted if you pay 25 percent of the rental payments missed during that time period on or before September 30, 2021.

You must provide, to your landlord, a declaration under penalty of perjury of your COVID-19-related financial distress attesting to the decreased income or increased expenses due to the COVID-19 pandemic to be protected by the eviction limitations described above. Before your landlord can seek to evict you for failing to make a payment that came due between March 1, 2020, and September 30, 2021, your landlord will be required to give you a 15-day notice that informs you of the amounts owed and includes a blank declaration form you can use to comply with this requirement.

If your landlord has proof of income on file that indicates that your household makes at least 130 percent of the median income for the county where the rental property is located, as published by the Department of Housing and Community Development in the Official State Income Limits for 2020, your landlord may also require you to provide documentation that shows that you have experienced a decrease in income or increase in expenses due to the COVID-19 pandemic. Your landlord must tell you in the 15-day notice whether your landlord is requiring that documentation. Any form of objectively verifiable documentation that demonstrates the financial impact you have experienced is sufficient, including a letter from your employer, an unemployment insurance record, or medical bills, and may be provided to satisfy the documentation requirement.

It is very important you do not ignore a 15-day notice to pay rent or quit or a notice to perform covenants or quit from your landlord. If you are served with a 15-day notice and do not provide the declaration form to your landlord before the 15-day notice expires, you could be evicted. You could also be evicted beginning October 1,

2021 if you owe rent payments due between September 1, 2020, and September 30, 2021, and you do not pay an amount equal to at least 25 percent of the payments missed for that time period.

YOU MAY QUALIFY FOR RENTAL ASSISTANCE. In addition to extending these eviction protections, the State of California, in partnership with federal and local governments, has created an emergency rental assistance program to assist renters who have been unable to pay their rent and utility bills as a result of the COVID-19 pandemic. This program may be able to help you get caught up with past-due rent. Additionally, depending on the availability of funds, the program may also be able to assist you with making future rental payments.

While not everyone will qualify for this assistance, you can apply for it regardless of your citizenship or immigration status. There is no charge to apply for or receive this assistance.

Additional information about the extension of the COVID-19 Tenant Relief Act and new state or local rental assistance programs, including more information about how to qualify for assistance, can be found by visiting http://housingiskey.com or by calling 1-833-430-2122.”

(d) The landlord may provide the notice required by subdivisions (a) to (c), inclusive, as applicable, in the manner prescribed by Section 1162 or by mail.

(e) (1) A landlord may not serve a notice pursuant to subdivision (b) or (c) of Section 1179.03 before the landlord has provided the notice required by subdivisions (a) to (c), inclusive, as applicable.

(2) The notice required by subdivision (a) may be provided to a tenant concurrently with a notice pursuant to subdivision (b) or (c) of Section 1179.03 that is served on or before September 30, 2020.

(3) The notice required by subdivision (b) may be provided to a tenant concurrently with a notice pursuant to subdivision (b) or (c) of Section 1179.03 that is served on or before February 28, 2021.

(4) The notice required by subdivision (c) may be provided to a tenant concurrently with a notice pursuant to subdivision (b) or (c) of Section 1179.03 that is served on or before September 30, 2021.

**SEC. 18.** Section 1179.05 of the Code of Civil Procedure is amended to read:

**1179.05.** (a) Any ordinance, resolution, regulation, or administrative action adopted by a city, county, or city and county in response to the COVID-19 pandemic to protect tenants from eviction is subject to all of the following:

(1) Any extension, expansion, renewal, reenactment, or new adoption of a measure, however delineated, that occurs between August 19, 2020, and March 31, 2022, shall have no effect before April 1, 2022.

(2) Any provision which allows a tenant a specified period of time in which to repay COVID-19 rental debt shall be subject to all of the following:

(A) If the provision in effect on August 19, 2020, required the repayment period to commence on a specific date on or before May 1, 2022, any extension of that date made after August 19, 2020, shall have no effect.

(B) If the provision in effect on August 19, 2020, required the repayment period to commence on a specific date after May 1, 2022, or conditioned commencement of the repayment period on the termination of a proclamation of state of emergency or local emergency, the repayment period is deemed to begin on May 1, 2022.

(C) The specified period of time during which a tenant is permitted to repay COVID-19 rental debt may not extend beyond the period that was in effect on August 19, 2020. In addition, a provision may not permit a tenant a period of time that extends beyond May 31, 2023, to repay COVID-19 rental debt.

(b) This section does not alter a city, county, or city and county's authority to extend, expand, renew, reenact, or newly adopt an ordinance that requires just cause for termination of a residential tenancy or amend existing ordinances that require just cause for termination of a residential tenancy, consistent with subdivision (g) of Section 1946.2, provided that a provision enacted or amended after August 19, 2020, shall not apply to rental payments that came due between March 1, 2020, and March 31, 2022.

(c) The one-year limitation provided in subdivision (2) of Section 1161 is tolled during any time period that a landlord is or was prohibited by any ordinance, resolution, regulation, or administrative action adopted by a city, county, or city and county in response to the COVID-19 pandemic to protect tenants from eviction based on

Case 2:21-cv-01394-JAM-JDP Document 1 Filed 08/05/21 Page 35 of 52

nonpayment of rental payments from serving a notice that demands payment of COVID-19 rental debt pursuant to subdivision (e) of Section 798.56 of the Civil Code or paragraph (2) of Section 1161.

(d) It is the intent of the Legislature that this section be applied retroactively to August 19, 2020.

(e) The Legislature finds and declares that this section addresses a matter of statewide concern rather than a municipal affair as that term is used in Section 5 of Article XI of the California Constitution. Therefore, this section applies to all cities, including charter cities.

(f) It is the intent of the Legislature that the purpose of this section is to protect individuals negatively impacted by the COVID-19 pandemic, and that this section does not provide the Legislature's understanding of the legal validity on any specific ordinance, resolution, regulation, or administrative action adopted by a city, county, or city and county in response to the COVID-19 pandemic to protect tenants from eviction.

**SEC. 19.** Section 1179.07 of the Code of Civil Procedure is amended to read:

**1179.07.** This chapter shall remain in effect until October 1, 2025, and as of that date is repealed.

**SEC. 20.** Chapter 6 (commencing with Section 1179.08) is added to Title 3 of Part 3 of the Code of Civil Procedure, to read:

**CHAPTER 6. COVID-19 Rental Housing Recovery Act**

**1179.08.** This chapter shall be known, and may be cited, as the COVID-19 Rental Housing Recovery Act.

**1179.09.** For purposes of this chapter:

(a) "Approved application" means an application for which a government rental assistance program has verified applicant eligibility, and the requested funds have been obligated to the applicant for payment.

(b) "COVID-19 recovery period rental debt" means a rental debt of a tenant under a tenancy that came due between October 1, 2021, and March 31, 2022.

(c) "COVID-19 rental debt" has the same meaning as defined in Section 1179.02.

(d) (1) "Final decision" means either of the following determinations by a government rental assistance program regarding an application for rental assistance:

(A) The application is an approved application.

(B) The application is denied for any of the following reasons:

(i) The tenant is not eligible for government rental assistance.

(ii) The government rental assistance program no longer has sufficient rental assistance funds to approve the application.

(iii) The application for government rental assistance remains incomplete 15 days, excluding Saturdays, Sundays, and other judicial holidays, after the landlord properly completed the portion of the application that is the responsibility of the landlord because of failure on the part of the tenant to properly complete the portion of the application that is the responsibility of the tenant.

(2) "Final decision" does not include any of the following:

(A) The rejection of an application as incomplete or improperly completed by a landlord.

(B) Notification that an application is temporarily pending further action by the government rental assistance program or the applicant.

(C) Notification that the landlord or tenant applied to the wrong government rental assistance program for the property or rental debt at issue.

(e) "Government rental assistance program" means any rental assistance program authorized pursuant to Chapter 17 (commencing with Section 50897) of Part 2 of Division 31 of the Health and Safety Code.

Case 2:21-cv-01394-JAM-JDP   Document 1   Filed 08/05/21   Page 36 of 52

(f) "Pertinent government rental assistance program" means a government rental assistance program for the city, county, or city and county in which the property at issue is located.

(g) "Rental debt" means an unpaid rent or other unpaid financial obligation of a tenant under the tenancy that has come due.

(h) (1) "Rental debt that accumulated due to COVID-19 hardship" means COVID-19 rental debt, COVID-19 recovery period rental debt, or a combination of both, if it accumulated during a tenancy initially established before October 1, 2021.

(2) (A) For purposes of this subdivision, a tenancy is initially established when the tenants first lawfully occupy the premises.

(B) Any of the following do not initially establish a tenancy:

(i) The renewal of a periodic tenancy.

(ii) The extension of an existing lease or rental agreement.

(iii) The execution of a new lease or rental agreement with one or more individuals who already lawfully occupy the premises.

**1179.10.** (a) A notice for a residential rental property that demands payment of COVID-19 recovery period rental debt and that is served pursuant to subdivision (e) of Section 798.56 of the Civil Code or paragraph (2) or (3) of Section 1161 shall be modified as follows:

(1) The time period in which the tenant may pay the amount due or deliver possession of the property shall be no shorter than three days, excluding Saturdays, Sundays, and other judicial holidays.

(2) The notice shall include all of the following:

(A) The amount of rent demanded and the date each amount became due.

(B) The telephone number and internet website address of the pertinent government rental assistance program.

(C) The following bold text in at least 12-point font:


"IMPORTANT NOTICE FROM THE STATE OF CALIFORNIA – YOU MUST TAKE ACTION TO AVOID AN EVICTION: As part of the state's COVID-19 relief plan, money has been set aside to help renters who have fallen behind on rent or utility payments.

If you cannot pay the amount demanded in this notice, YOU SHOULD COMPLETE A RENTAL ASSISTANCE APPLICATION IMMEDIATELY! It is free and simple to apply. Citizenship or immigration status does not matter.

DO NOT DELAY! IF YOU DO NOT COMPLETE YOUR APPLICATION FOR RENTAL ASSISTANCE WITHIN 15 BUSINESS DAYS, YOUR LANDLORD MAY BE ABLE TO SUE TO OBTAIN A COURT ORDER FOR YOUR EVICTION.

You can start your application by calling 1-833-430-2122 or visiting http://housingiskey.com.


(D) If the landlord was required, pursuant to Section 1632 of the Civil Code, to provide a translation of the rental contract or agreement in the language in which the contract or agreement was negotiated, the landlord shall also provide the text of the notice in subparagraph (C) to the tenant in the language in which the contract or agreement was negotiated. The Business, Consumer Services, and Housing Agency shall make available on the http://housingiskey.com internet website an official translation of the text required by subparagraph (C) in the languages specified in Section 1632 of the Civil Code by no later than September 15, 2021.

(b) (1) A notice that demands payment of COVID-19 recovery period rental debt that does not meet the requirements of this section is not sufficient to establish a cause of action for unlawful detainer or a basis for default judgment.

(2) The court, upon its own motion or upon a motion by a defendant in the case, shall dismiss a cause of action for unlawful detainer that is based on a notice that demands payment of COVID-19 recovery period rental debt if the notice does not meet the requirements of this section.

(3) A defendant may raise the nonpayment of a notice pursuant to this section as a complete defense to an unlawful detainer.

**1179.11.** On or after October 1, 2021, and before March 31, 2022, in an unlawful detainer action pertaining to residential real property and based, in whole or in part, on nonpayment of rental debt that accumulated due to COVID-19 hardship, all of the following shall apply:

(a) A court shall not issue a summons on a complaint for unlawful detainer that seeks possession of residential real property based on nonpayment of rental debt that accumulated due to COVID-19 hardship unless the plaintiff, in addition to any other requirements provided by law, also files any of the following:

(1) Both of the following:

(A) A statement verifying, under penalty of perjury, that before filing the complaint, the landlord completed an application for government rental assistance to cover the rental debt demanded from the defendants in the case, but the application was denied.

(B) A copy of a final decision from the pertinent government rental assistance program denying a rental assistance application for the property at issue in the case.

(2) A statement, under penalty of perjury, verifying that all of the following are true:

(A) Before filing the complaint, the landlord submitted a completed application, as defined in Section 50897 of the Health and Safety Code, for rental assistance to the pertinent government rental assistance program to cover the rental debt demanded from the defendants in the case.

(B) Twenty days have passed since the later of the following:

(i) The date that the landlord submitted the application as described in subparagraph (A).

(ii) The date that the landlord served the tenant with the three-day notice underlying the complaint.

(C) The landlord has not received notice or obtained verification from the pertinent government rental assistance program indicating that the tenant has submitted a completed application for rental assistance to cover the rental debt demanded from the defendants in the case.

(D) The landlord has received no communication from the tenant that the tenant has applied for government rental assistance to cover the unpaid rental debt demanded from the defendants in the case.

(3) A statement, under penalty of perjury, that the rental debt demanded from the defendant in the complaint accumulated under a tenancy that was initially established, as described in paragraph (2) of subdivision (h) of Section 1179.09, on or after October 1, 2021.

(b) A statement under penalty of perjury described in subdivision (a) shall be made on a form developed or revised by the Judicial Council for this purpose if the Judicial Council determines that this requirement is necessary to accomplish the purpose of the statement.

(c) (1) A judgment or default judgment shall not issue in favor of the plaintiff unless the court finds, upon review of the pleadings and any other evidence brought before it, that both of the following are true:

(A) Before filing the complaint, the plaintiff completed an application to the pertinent government rental assistance program for rental assistance to cover the rental debt demanded in the complaint.

(B) The plaintiff's application for rental assistance was denied because of lack of eligibility, lack of funding, or the application remained incomplete due to the tenant's failure to properly complete the portion of the application that is the responsibility of the tenant for 15 days, excluding Saturdays, Sundays, and other judicial holidays, after the landlord properly completed the portion of the application that is responsibility of the landlord.

(2) In making its findings pursuant to this paragraph, the court may take judicial notice of information available to the court pursuant to Section 1179.12.

(d) In addition to the summons, the complaint, and any other required document, the plaintiff shall serve the defendant with copies of the statement and final decision filed with the court pursuant to subdivision (a). The absence of these copies shall be sufficient grounds to grant a motion to quash service of the summons.

(e) If the defendant contests whether the plaintiff has met the requirements of subdivision (c), the plaintiff shall bear the burden of proving to the court that the plaintiff has met those requirements.

(f) The Legislature finds and declares all of the following:

(1) For rental debt that accumulated due to COVID-19 hardship that was incurred on or after October 1, 2021, and before March 31, 2022, a landlord must be compensated for all of the unpaid rent demanded in the notice that forms the basis of the complaint in order to prevent an unlawful detainer judgment based on that complaint.

(2) That for rental debt that accumulated due to COVID-19 hardship that was incurred on or after September 1, 2020, and before September 30, 2021, a landlord must be provided 25 percent of the unpaid rent demanded in the notice that forms the basis of the complaint before October 1, 2021, in order to prevent an unlawful detainer judgment based on that complaint.

(g) A summons on a complaint issued pursuant to paragraph (3) of subdivision (a) shall not be construed to subject the complaint to the requirements of this chapter.

**1179.12.** (a) Each government rental assistance program shall, by no later than September 15, 2021, develop mechanisms, including, but not limited to, telephone or online access, through which landlords, tenants, and the court may do both of the following:

(1) Verify the status of an application for rental assistance based upon the property address and a unique application number.

(2) Obtain copies of any determination on an application for rental assistance. A determination shall indicate all of the following:

(A) The name of the tenant that is the subject of the application.

(B) The address of the property that is the subject of the application.

(C) Whether the application has been approved or denied.

(D) If the application has been approved, then the amount of the payment that has been approved and the period and type of rental debt to which the amount corresponds.

(E) If the application has been denied, the reason for the denial, which shall be any of the following:

(i) The tenant is ineligible for government rental assistance.

(ii) The government rental assistance program no longer has sufficient funds to approve the application.

(iii) The application remained incomplete 15 days, excluding Saturdays, Sundays, and other judicial holidays, after it was initially submitted because of failure on the part of the tenant to provide required information.

(b) A government rental assistance program that does not comply with this section shall be deemed ineligible to receive further block grant allocations pursuant to Section 50897.2 of, or 50897.2.1 of, the Health and Safety Code.

(c) It shall be unlawful for a person to access or use any information available pursuant to subdivision (a) for any purpose other than to determine the status of an application for assistance.

**1179.13.** (a) A court shall prevent the forfeiture of a lease or rental agreement, whether written or oral, and whether or not the tenancy has terminated, and restore the tenant to the former estate or tenancy, if necessary, if all of the following apply:

(1) The complaint for unlawful detainer is based on a demand for payment of rental debt that accumulated due to COVID-19 financial hardship.

(2) (A) The tenant submits verification to the court that a government rental assistance program has approved an application for rental assistance corresponding to part or all of the rental debt demanded in the complaint.

(B) The verification described in this paragraph shall be in the form of either of the following:

(i) A copy of a final decision from the government rental assistance program showing the property address, the amount of payment approved, and the time period for which assistance was provided.

(ii) The property address and a unique application number to enable the court to obtain confirmation of the final decision, the corresponding property address, the amount of the payment approved, and the time period for which assistance was provided.

(3) The approved payment from the rental assistance program, together with any additional payments made by the tenant, constitute full payment of the rental debt demanded in the complaint.

(b) An application pursuant to this section may be made only at any time before restoration of the premises to the landlord.

(c) (1) An application pursuant to this section shall consist of verification that a government rental assistance program has approved an application for rental assistance corresponding to the rental debt demanded in the complaint.

(2) The verification described in this subdivision shall consist of either of the following:

(A) A copy of the final decision from the government rental assistance program approving the application, showing the property address, and indicating the amount of payment approved.

(B) A property address and unique application number to enable the court to obtain confirmation of the final decision, the corresponding property address, and the amount of the payment approved.

(3) (A) Except as provided in subparagraph (B), a tenant shall not be required to file any documentation not described in paragraph (1) or pleading with the court in order to apply for relief pursuant to this section.

(B) The verification required by this subdivision shall be provided on or accompanied by a form developed or revised by the Judicial Council for this purpose if the Judicial Council determines that this requirement is necessary to accomplish the purpose of the verification.

(d) Upon the filing of an application for relief pursuant to this section, the court shall do both of the following:

(1) Set a hearing on the matter on not less than 5 days' notice and not more than 10 days' notice to the parties, to be given by the court, and to be held separately or in conjunction with any regularly noticed hearing or trial in the case.

(2) Stay the action if no judgment has been entered in the case, immediately stay execution of any writ of possession issued in the case through the date of the hearing, and notify the sheriff accordingly.

(e) (1) At the hearing set pursuant to paragraph (1) of subdivision (d), the court shall rule upon the application for relief pursuant to this section in one of the following ways:

(A) If the tenant does not qualify for relief pursuant to subdivision (a), the court shall deny the application. A denial pursuant to this subparagraph may be used as evidence in an unlawful detainer action between the parties.

(B) If the tenant qualifies for relief pursuant to subdivision (a), and the plaintiff has received all of the payments described in paragraph (3) of subdivision (a), then the court shall grant the application, set aside any judgment issued in the case, and dismiss the case.

(C) If the tenant qualifies for relief pursuant to subdivision (a), and the plaintiff has not received all of the payments described in paragraph (3) of subdivision (a), the court shall do all of the following:

(i) Set a followup hearing to be held within 15 days, excluding Saturdays, Sundays, and other judicial holidays.

(ii) Extend the stay of the action through the date of that followup hearing.

(iii) Extend the stay of execution of any writ of possession in the case through the date of that followup hearing.

(D) At any followup hearing pursuant to subparagraph (C), the court shall issue one of the following orders:

(i) If the government rental assistance program has withdrawn the approval of rental assistance, then the court shall deny the application.

(ii) If the plaintiff has received all of the payments described in paragraph (3) of subdivision (a), then the court shall grant the application, set aside any judgment issued in the case, and dismiss the case.

Case 2:21-cv-01394-JAM-JDP Document 1 Filed 08/05/21 Page 40 of 52

(iii) If the government rental assistance program has not withdrawn the approval of rental assistance, but the landlord has not received all of the payments described in paragraph (3) of subdivision (a) because the rental assistance program has not yet issued its part of the payment, then the court shall order another followup hearing in accordance with this subparagraph.

(iv) If the government rental assistance program has not withdrawn the approval of rental assistance, but the landlord has not received all of the payments described in paragraph (3) of subdivision (a) because the tenant has not yet paid the tenant's part of the payment, then the court shall deny the application with prejudice.

(2) If a court grants an application for relief pursuant to this section, the tenant shall not be considered the prevailing party for purposes of Section 1032, any attorney's fee provision appearing in contract or statute, or any other law.

**1179.14.** If the criteria for issuance of a summons pursuant to subdivision (a) of Section 1179.11 have not been satisfied within 60 days of the complaint's filing, the court shall dismiss the action without prejudice.

**1179.15.** This chapter shall remain in effect until September 30, 2024, and as of that date is repealed.

**SEC. 21.** Section 50897 of the Health and Safety Code is amended to read:

**50897.** For purposes of this chapter:

(a) "City" means a city or a city and county. For purposes of this chapter, a city may be organized either under the general laws of this state or under a charter adopted pursuant to Section 3 of Article XI of the California Constitution.

(b) "County" means a county, including a county organized under a charter adopted pursuant to Section 3 of Article XI of the California Constitution, or a city and county.

(c) "Completed application" means an application for which a landlord or eligible household, as applicable, has provided all the necessary contact information and documentation required for a government rental assistance program to initiate a review of the application for eligibility.

(d) "Department" means the Department of Housing and Community Development.

(e) (1) "Eligible household" has the same meaning as defined in Section 501(k)(3) of Subtitle A of Title V of Division N of the federal Consolidated Appropriations Act, 2021 (Public Law 116-260).

(2) Notwithstanding paragraph (1), for purposes of Round 2, "eligible household" has the same meaning as defined in Section 3201(f)(2) of Subtitle B of Title III of the American Rescue Plan Act of 2021 (Public Law 117-2).

(f) "Federally recognized tribe" means an Indian tribe, as described in Section 501(k)(2)(C) of Subtitle A of Title V of Division N of the federal Consolidated Appropriations Act, 2021 (Public Law 116-260).

(g) "Grantee" means a city, including a charter city, a county, including a charter county, or a city and county, including a charter city and county, that participates in a rental assistance program pursuant to this chapter.

(h) "Option A" means the administrative option grantees utilize pursuant to subparagraphs (A) and (B) of paragraph (1) of subdivision (b) of Section 50897.3 or subparagraphs (A) and (B) of paragraph (1) of subdivision (b) of Section 50897.3.1, as applicable.

(i) "Option B" means the administrative option grantees utilize pursuant to Section 50897.2 or 50897.2.1, as applicable.

(j) "Option C" means the administrative option grantees utilize pursuant to paragraph (2) of subdivision (b) of Section 50897.3 or paragraph (2) of subdivision (b) of Section 50897.3.1, as applicable.

(k) "Program" means the process for awarding funds for state rental assistance pursuant to this chapter, as provided in Section 50897.2, 50897.2.1, 50897.3, or 50897.3.1, as applicable.

(l) "Program implementer" means the contracted vendor selected to administer emergency rental assistance under the program pursuant to paragraph (1) of subdivision (a) of Section 50897.3.

Case 2:21-cv-01394-JAM-JDP Document 1 Filed 08/05/21 Page 41 of 52

(m) "Prospective rent payment" means a rent payment eligible for financial assistance pursuant to Section 501(c)(2)(A) of Subtitle A of Title V of Division N of the federal Consolidated Appropriations Act, 2021 (Public Law 116-260).

(n) "Rental arrears" means rental arrears eligible for financial assistance pursuant to Section 501(c)(2)(A) of Subtitle A of Title V of Division N of the federal Consolidated Appropriations Act, 2021 (Public Law 116-260).

(o) "Round 1" means the state rental assistance program established by funds provided by Subtitle A of Title V of Division N of the federal Consolidated Appropriations Act, 2021 (Public Law 116-260).

(p) "Round 2" means the state rental assistance program established by funds provided by Section 3201 of Subtitle B of Title III of the federal American Rescue Plan Act of 2021 (Public Law 117-2).

(q) "State reservation table" means the methodology for allocating the state's portion of funding for Round 1 and Round 2 as follows:

(1) (A) With respect to funding received for Round 1, no more than 10 percent for state administration.

(B) Round 1 shall include one hundred fifty million dollars ($150,000,000) total set aside for smaller counties with a population less than 200,000, allocated based on the proportional share of population from the 2019 federal census data.

(C) The remainder of the state allocation to be distributed to eligible grantees with a population 200,000 or greater, based on their proportional share of population from the 2019 federal census data.

(2) (A) With respect to funding for Round 2, no more than 15 percent shall be used for state administration.

(B) Subject to the requirements of this paragraph, Round 2 funding shall include one hundred twenty-five million dollars ($125,000,000) total set aside for counties with a population less than 200,000, allocated based on their proportional share of the population from the 2019 federal census data.

(C) The remainder of the state allocation to be distributed to grantees with a population 200,000 or greater, based on their proportional share of population from the 2019 federal census data.

(D) The department shall pay all grantees an initial payment that is equal to an amount not less than 40 percent of each grantee's total allocation provided under this paragraph.

(i) Subsequent payments shall be paid to grantees in tranches up to the full amount of each grantee's total state allocation in accordance with a procedure established by the department that shall require that a grantee have obligated not less than 75 percent of funds provided pursuant to this subparagraph.

(ii) The department shall have the authority to reallocate unused funds and shall prioritize allocating funds based on factors that include a grantee's unmet need, rate of application submissions, rate of attrition, and rate of expenditures.

(r) "Utilities" means utilities and home energy costs eligible for financial assistance pursuant to Section 501(c)(2)(A) of Subtitle A of Title V of Division N of the federal Consolidated Appropriations Act, 2021 (Public Law 116-260).

**SEC. 22.** Section 50897.1 of the Health and Safety Code is amended to read:

**50897.1.** (a) (1) Funds available for rental assistance pursuant to this chapter shall consist of state rental assistance funds made available pursuant to Subtitle A of Title V of Division N of the federal Consolidated Appropriations Act, 2021 (Public Law 116-260) and Section 3201 of Subtitle B of Title III of the federal American Rescue Plan Act of 2021 (Public Law 117-2) and shall be administered by the department in accordance with this chapter and applicable federal law.

(2) Each grantee shall be eligible to receive an allocation of rental assistance funds, calculated in accordance with the state reservation table.

(3) The state high-need grantee set aside provided pursuant to Section 3201(a)(2)(D) of Subtitle B of Title III of the American Rescue Plan Act of 2021 (Public Law 117-2) shall be allocated or administered by the department, or program implementer, pursuant to applicable federal requirements.

Case 2:21-cv-01394-JAM-JDP   Document 1   Filed 08/05/21   Page 42 of 52

(4) Additional rental assistance funds allocated to the state from the United States Treasury pursuant to Section 501(d) of Subtitle A of Title V of Division N of the federal Consolidated Appropriations Act, 2021 (Public Law 116-260) or Section 3201(e) of Subtitle B of Title III of the federal American Rescue Plan Act of 2021 (Public Law 117-2) shall be allocated, at the department's discretion, with prioritization based on factors that include a grantee's unmet need, rate of application submissions, rate of attrition, and rate of expenditures.

(5) Except as otherwise provided in this chapter, funds available for rental assistance administered pursuant to Section 50897.3 or 50897.3.1 shall consist of state rental assistance funds calculated pursuant to the state reservation table.

(b) Funds provided for and administered pursuant to this chapter shall be used in a manner consistent with federal law, including the prioritization of assistance specified in Section 501(c)(4) of Subtitle A of Title V of Division N of the federal Consolidated Appropriations Act, 2021 (Public Law 116-260). In addition, in providing assistance pursuant to this chapter, the department and, if applicable, the program implementer shall prioritize communities disproportionately impacted by COVID-19, as determined by the department. State prioritization shall be as follows:

(1) Priority one shall be eligible households, as specified in Section 501(c)(4) of Subtitle A of Title V of Division N of the federal Consolidated Appropriations Act, 2021 (Public Law 116-260), to expressly target assistance for eligible households with a household income that is not more than 50 percent of the area median or any eligible households that receive a notice described in Section 1179.10 of the Code of Civil Procedure or a summons described in Section 1179.11 of the Code of Civil Procedure.

(2) Priority two shall be communities disproportionately impacted by COVID-19, as determined by the department.

(3) Priority three shall be eligible households that are not otherwise prioritized as described in paragraphs (1) and (2), to expressly include eligible households with a household income that is not more than 80 percent of the area median income.

(c) (1) Except as otherwise provided in paragraph (2), eligible uses for funds made available to a grantee under this chapter shall be as follows:

(A) Rental arrears.

(B) Prospective rent payments.

(C) Utilities, including arrears and prospective payments for utilities.

(D) Any other expenses related to housing as provided in Section 501(c)(2)(A) of Subtitle A of Title V of Division N of the federal Consolidated Appropriations Act, 2021 (Public Law 116-260).

(E) Any additional use authorized under federal law and guidance.

(2) For purposes of stabilizing households and preventing evictions, rental arrears shall be given priority for purposes of providing rental assistance pursuant to this chapter.

(3) Remaining funds not used as described in paragraph (2) may be used for any eligible use described in subparagraphs (B), (C), and (D) of paragraph (1).

(d) Assistance for rental arrears may be provided as a payment directly to a landlord on behalf of an eligible household by entering into an agreement with the landlord, subject to both of the following:

(1) Assistance for rental arrears shall be set at compensation of 100 percent of an eligible household's unpaid rental debt accumulated on or after April 1, 2020.

(2) (A) Acceptance of a payment made pursuant to this subdivision shall be conditioned on the landlord's agreement to accept the payment as payment in full of the rental debt owed by any tenant within the eligible household for whom rental assistance is being provided for the specified time period. The landlord's release of claims pursuant to this subparagraph shall take effect only upon payment being made to the landlord pursuant to this subdivision.

(B) The landlord's agreement to accept payment pursuant to this subdivision as payment in full, as provided in subparagraph (A), shall include the landlord's agreement to release any and all claims for nonpayment of rental debt owed for the specified time period, including a claim for unlawful detainer pursuant to paragraph (2) and

(3) Section 1161 of the Code of Civil Procedure against any tenant within the eligible household for whom the rental assistance is being provided.

(e) (1) A member of an eligible household may directly apply for rental arrears assistance from the grantee. Assistance for rental arrears pursuant to this subdivision shall be set at compensation of 100 percent of the eligible household's unpaid rental debt accumulated on or after April 1, 2020.

(2) (A) Upon receipt of assistance, the eligible household shall provide the full amount of rental arrears to the landlord within 15 days, excluding Saturdays, Sundays, and judicial holidays, of receipt of the funds.

(B) (i) If the household does not comply with subparagraph (A), the landlord may charge a late fee not to exceed the amount that the landlord may charge a tenant for one late rental payment under the terms of the lease or rental agreement.

(ii) Failure to pay a late fee charged by a landlord pursuant to this subparagraph shall not be grounds for an unlawful detainer action.

(C) A member of an eligible household described by this paragraph shall attest under penalty of perjury that the household will comply with the requirements of this paragraph.

(f) Funds used to provide assistance for prospective rent payments for an eligible household shall be set at 100 percent of the eligible household's monthly rent.

(g) (1) When a landlord or tenant submits a completed application, grantees shall provide notification to the respective parties included in the application.

(2) Upon approval of payment for a landlord or tenant application, as applicable, grantees shall provide notification to the respective parties included in the application.

(h) (1) Assistance provided under this chapter shall be provided to eligible households or, if applicable, to landlords on behalf of eligible households that are currently housed and occupying the residential unit for which the assistance is requested at the time of application.

(2) (A) Notwithstanding paragraph (1), eligible households that no longer occupy the residential unit with respect to which rental assistance has been requested and have demonstrated rental arrears shall be eligible for assistance.

(B) (i) Subject to clause (ii), assistance provided pursuant to this paragraph shall be prioritized to participating landlords.

(ii) If the landlord does not participate, payments may be provided directly to the eligible household if the eligible household provides any amount received for rental assistance to the landlord. A member of the eligible household shall attest under penalty of perjury that the household will comply with the requirements of this clause.

(C) It is the intent of the Legislature for grantees to exercise maximum discretion within the limitations of federal law and guidance to establish eligibility and documentation requirements for households no longer occupying the unit in question to ensure funds administered pursuant to this paragraph are deployed in a streamlined manner.

(D) A payment made directly to a participating landlord pursuant to this paragraph shall be considered as payment in full and shall include the landlord's agreement to release any and all claims for nonpayment of rental debt owed for the specified time period, including a claim for unlawful detainer pursuant to paragraphs (2) and (3) of Section 1161 of the Code of Civil Procedure.

(i) For purposes of the protections against housing discrimination provided under the California Fair Employment and Housing Act (Part 2.8 (commencing with Section 12900) of Division 3 of Title 2 of the Government Code), assistance provided under this chapter shall be deemed to be a "source of income," as that term is defined in subdivision (i) of Section 12927 of the Government Code.

(j) (1) Notwithstanding any other law, except as otherwise provided in subdivision (i), assistance provided to an eligible household for a payment as provided in this chapter or as provided as a direct allocation to grantees from the Secretary of the Treasury pursuant to Subtitle A of Title V of Division N of the federal Consolidated Appropriations Act, 2021 (Public Law 116-260) or Section 3201 of Subtitle B of Title III of the American Rescue Plan Act of 2021 (Public Law 117-2) shall not be deemed to be income for purposes of the Personal Income Tax Law (Part 10 (commencing with Section 17001) of Division 2 of the Revenue and Taxation Code) or used to

8/5/2021                    Bill Text - AB-832 COVID-19 relief: tenancy: federal rental assistance.

Case 2:21-cv-01139-JAM-JDP   Document 1   Filed 08/05/21   Page 44 of 52

determine the eligibility of an eligible household, or a member of an eligible household, for any state program or local program financed wholly or in part by state funds.

(2) Notwithstanding any other law, for taxable years beginning on or after January 1, 2020, and before January 1, 2025, gross income shall not include a tenant's rent liability that is forgiven by a landlord as provided in this chapter or as rent forgiveness provided through funds grantees received as a direct allocation from the Secretary of the Treasury pursuant to Subtitle A of Title V of Division N of the federal Consolidated Appropriations Act, 2021 (Public Law 116-260) or Section 3201 of Subtitle B of Title III of the American Rescue Plan Act of 2021 (Public Law 117-2).

(k) (1) The department may adopt, amend, and repeal rules, guidelines, or procedures necessary to carry out the purposes of this chapter, including guidelines regarding the administration of federal rental assistance funds received under Subtitle A of Title V of Division N of the federal Consolidated Appropriations Act, 2021 (Public Law 116-260) or the administration of federal rental assistance funds received under Section 3201 of Subtitle B of Title III of the American Rescue Plan Act of 2021 (Public Law 117-2) that are consistent with the requirements of that federal law and any regulations promulgated pursuant to that federal law.

(2) The adoption, amendment, or repeal of rules, guidelines, or procedures authorized by this subdivision is exempt from the rulemaking provisions of the Administrative Procedure Act (Chapter 3.5 (commencing with Section 11340) of Part 1 of Division 3 of Title 2 of the Government Code).

(l) Any interest that the state, a grantee, or, if applicable, the program implementer derives from the deposit of funds made available pursuant to this chapter or pursuant to subdivision (e) of Section 925.6 of the Government Code shall be used to provide additional assistance under this chapter.

(m) Upon notification from the Director of Finance to the Joint Legislative Budget Committee that additional federal rental assistance resources have been obtained, that assistance may be deployed in a manner consistent with this chapter. Any statutory provision established by subsequent federal law specific to the administration of those additional resources shall supersede the provisions contained in this chapter to the extent that there is a conflict between those federal statutory provisions and this chapter. To implement future federal rental assistance, the department shall make corresponding programmatic changes to effectuate the program in compliance with federal law.

(n) Notwithstanding any other law, a third party shall be prohibited from receiving compensation for services provided to an eligible household in applying for or receiving assistance under this chapter, except that this prohibition shall not apply to any contracted entity that renders those services upon the express authorization by the department, the program implementer, or a grantee.

(o) Assistance provided under this chapter shall include a receipt that provides confirmation of payment that has been made. The receipt shall include, but not be limited to, the amount of payment or forgiveness, as applicable, and the time period for which assistance was provided. The receipt shall be provided to both the eligible household and the landlord.

(p) (1) The department, program implementer, or grantee, as applicable, that has completed rental assistance payments subject to the provisions of this section, as amended by Chapter 5 of the Statutes of 2021, shall provide additional assistance to previous recipients so that total assistance provided is equivalent to 100 percent of an eligible household's rental arrears or prospective rent for the period originally requested, as applicable.

(2) To make payments pursuant to this subdivision in a timely manner, additional assistance shall be executed without the counter signature from the eligible household or landlord.

(q) A grantee may request a change to its administrative option as provided in Round 1 or Round 2, as applicable, subject to the approval of the department.

(r) (1) A grantee that receives funds and administer rental assistance programs pursuant to this chapter shall meet the requirements of Chapter 6 (commencing with Section 1179.08) of Title 3 of Part 3 of the Code of Civil Procedure.

(2) A grantee shall provide notification to the landlord and tenant when either the landlord or the tenant submits a completed application for rental assistance.

(3) A grantee shall provide notification to the landlord and tenant once a final decision has been rendered. The notification shall include the total amount of assistance paid and the time period for which assistance was provided, as applicable.

(4) Failure to comply with the requirements of this subdivision may result in the grantee's share of funds received from the state pursuant to Section 50897.2 or 50897.2.1 reverted to the department for reallocation at the department's discretion.

(s) For purposes of this section:

(1) "Rental debt" includes rent, fees, interest, or any other financial obligation under a lease for use and occupancy of the leased premises, but does not include liability for torts or damage to the property beyond ordinary wear and tear.

(2) "Specified time period" means the period of time for which payment is provided, as specified in the agreement entered into with the landlord.

**SEC. 23.** Section 50897.2 of the Health and Safety Code is amended to read:

**50897.2.** (a) (1) A grantee that has a population of 500,000 or greater shall be eligible to receive a block grant allocation from the department.

(2) A grantee with a population of 499,999 or less, but greater than 200,000, may request an allocation of block grant funds pursuant to this section, in the form and manner prescribed by the department. The department shall grant a request for an allocation of block grant funds pursuant to this paragraph if the grantee attests and, in the department's judgment, demonstrates that it has established a program consistent with the requirements of this chapter and has the capability to implement the resources provided in accordance with applicable state and federal law, including this chapter and Subtitle A of Title V of Division N of the federal Consolidated Appropriations Act, 2021 (Public Law 116-260).

(3) A grantee that is not eligible for, or does not receive, an allocation of block grant funds pursuant to this section shall receive its proportionate share of funds in accordance with the state reservation table, as provided in Section 50897.3.

(4) A grantee that receives a block grant pursuant to this section shall attest to the department, in the form and manner prescribed by the department, that it will distribute assistance equitably and consistent with demonstrated need within the jurisdiction.

(5) To receive funds pursuant to this section, an applicant shall agree to utilize its direct allocation of assistance from the Secretary of the Treasury pursuant to Section 501 of Subtitle A of Title V of Division N of the federal Consolidated Appropriations Act, 2021 (Public Law 116-260) in a manner consistent with this chapter. Refusal to comply with this paragraph shall result in the applicant being prohibited from receiving state block grant funds and may result in the department recouping block grant funds that are spent in a manner inconsistent with this chapter.

(6) A grantee that receives funds pursuant to this section shall not institute additional programmatic requirements that may inhibit participation in the rental assistance program.

(7) A grantee that applies for assistance under this section may apply for an award allocation through an authorized representative, without its legislative body expressly adopting an ordinance or resolution authorizing that application, provided that it later authorizes a representative of the eligible grantee with legal authority to bind the eligible grantee to the terms and conditions of the award before executing the agreement with the department.

(8) The department shall allocate all funds made available for purposes of this section, in consultation with the Department of Finance. The initial allocation shall be completed and shared no later than February 19, 2021.

(b) Block grant funds allocated pursuant to this section shall be used for those eligible uses and compensation requirements specified in, and subject to the applicable requirements of, Section 50897.1.

(c) The deadlines for the allocation and use of block grant funds pursuant to this section shall be as follows:

(1) A grantee shall request that allocation from the department no later than February 12, 2021. If a grantee fails to request the allocation by that date, the moneys that would have otherwise been allocated to that grantee shall instead be used to provide assistance in accordance with Section 50897.3.

(2) A grantee that receives block grant funds under this section shall contractually obligate at least 65 percent of those funds by August 1, 2021.

Case 2:21-cv-01394-JAM-JDP Document 1 Filed 08/05/21 Page 46 of 52

(d) (1) (A) Subject to subparagraph (B), if a grantee receives block grant funds under this section fails to contractually obligate the minimum amount of those funds by the deadline specified in paragraph (2) of subdivision (c), the grantee shall repay to the department any unused amount of block grant funds allocated to it not contractually obligated or expended.

(B) The department may waive the requirement to repay funds pursuant to subparagraph (A) if the grantee demonstrates, to the satisfaction of the department, that it will contractually obligate and expend any unused block grant funds allocated to it within the timeframes specified in federal law.

(2) The department may reallocate any funds repaid pursuant to paragraph (1) for purposes of this section. In reallocating those funds, the department shall prioritize allocating additional funding to grantees based on factors that include unmet need, rate of application submissions, rate of attrition, and rate of expenditures.

(e) A grantee participating in the program pursuant to this section shall enter into a standard regulatory agreement with the department that includes terms and conditions consistent with the requirements set forth in this section.

(f) A grantee that receives an allocation of block grant funds pursuant to this section shall be solely responsible for compliance with all applicable management, implementation, and reporting requirements established under state and federal law.

(g) The requirements of this section shall apply only to the administration of Round 1 funds.

**SEC. 24.** Section 50897.2.1 is added to the Health and Safety Code, to read:

**50897.2.1.** (a) (1) A grantee that has a population of 500,000 or greater shall be eligible to receive a block grant allocation from the department.

(2) A grantee with a population of 499,999 or less, but greater than 200,000, may request an allocation of block grant funds pursuant to this section, in the form and manner prescribed by the department. The department shall grant a request for an allocation of block grant funds pursuant to this paragraph if the grantee attests and, in the department's judgment, demonstrates that it has established a program consistent with the requirements of this chapter and has the capability to implement the resources provided in accordance with applicable state and federal law, including this chapter and Section 3201 of Subtitle B of Title III of the federal American Rescue Plan Act of 2021 (Public Law 117-2).

(3) A grantee that is not eligible for, or does not receive, an allocation of block grant funds pursuant to this section shall receive its proportionate share of funds in accordance with the state reservation table, and those funds shall be administered as provided in Section 50897.3.1.

(4) A grantee that receives a block grant pursuant to this section shall attest to the department, in the form and manner prescribed by the department, that it will distribute assistance equitably and consistent with demonstrated need within the jurisdiction.

(5) To receive funds pursuant to this section, an applicant shall agree to utilize its assistance made available from the Secretary of the Treasury pursuant to Section 3201 of Subtitle B of Title III of the federal American Rescue Plan Act of 2021 (Public Law 117-2) in a manner consistent with this chapter. Refusal to comply with this paragraph shall result in the applicant being prohibited from receiving state block grant funds and may result in the department recouping block grant funds that are spent in a manner inconsistent with this chapter.

(6) A grantee that receives funds pursuant to this section shall not institute additional programmatic requirements that may inhibit participation in the rental assistance program.

(7) A grantee that applies for assistance under this section may apply for an award allocation through an authorized representative, without its legislative body expressly adopting an ordinance or resolution authorizing that application, if it later authorizes a representative of the eligible grantee with legal authority to bind the eligible grantee to the terms and conditions of the award before executing the agreement with the department.

(b) Block grant funds allocated pursuant to this section shall be used for those eligible uses and compensation requirements specified in, and subject to the applicable requirements of, Section 50897.1 and, upon approval by the department, other eligible uses provided in Section 3201(d)(1)(D) of Subtitle B of Title III of the federal American Rescue Plan Act of 2021 (Public Law 117-2).

(c) The deadlines for the allocation and use of block grant funds pursuant to this section shall be as follows:

Case 2:21-cv-01394-JAM-JDP  Document 1  Filed 08/05/21  Page 47 of 52

(1) A grantee shall request an allocation from the department no later than 30 calendar days after the operative date of this section. If a grantee fails to request the allocation by that date, the moneys that would have otherwise been allocated to that grantee shall instead be used to provide assistance in accordance with Section 50897.3.1.

(2) An Option B grantee that receives block grant funds under this section shall contractually obligate at least 75 percent of its first tranche of state funds by October 31, 2021.

(3) An Option B grantee that receives block grant funds under this section shall contractually obligate 50 percent of its total share of state funds by January 31, 2022.

(d) (1) (A) Subject to subparagraph (B), if a grantee that receives block grant funds under this section fails to contractually obligate the minimum amount of those funds by the deadline specified in paragraph (2) of subdivision (c), or to obligate the full amount of that allocation by the deadline specified in paragraph (3) of subdivision (c), the grantee shall repay to the department any unused amount of block grant funds allocated to it not contractually obligated or expended.

(B) The department may waive the requirement to repay funds pursuant to subparagraph (A) if the grantee demonstrates, to the satisfaction of the department, that it will contractually obligate and expend any unused block grant funds allocated to it within the timeframes specified in federal law.

(2) The department may reallocate any funds repaid pursuant to paragraph (1) for purposes of this section. In reallocating those funds, the department shall allocate funding to grantees based on factors that include unmet need, rate of application submissions, rate of attrition, and rate of expenditures.

(e) A grantee participating in the program pursuant to this section shall enter into a standard regulatory agreement with the department that includes terms and conditions consistent with the requirements of this section.

(f) An Option B grantee shall be solely responsible for compliance with all applicable management, implementation, and reporting requirements established under state and federal law.

(g) The requirements of this section shall apply only to the administration of Round 2 funds.

**SEC. 25.** Section 50897.3 of the Health and Safety Code is amended to read:

**50897.3.** (a) (1) (A) The department may contract with a vendor to serve as the program implementer to manage and fund services and distribute emergency rental assistance resources pursuant to this section. A vendor selected to serve as program implementer shall demonstrate sufficient capacity and experience to administer a program of this scope and scale.

(B) The program implementer shall have existing relationships with community-level partners to ensure all regional geographies and target communities throughout the state have access to the program.

(C) (i) The program implementer shall have the technological capacity to develop and to implement a central technology-driven application portal and system that serves landlords and tenants, has mobile and multilanguage capabilities, and allows an applicant track the status of their application. The application system shall have the capacity to handle the volume of expected use without disruption.

(ii) The system shall begin accepting applications no later than March 15, 2021 and be available 24 hours a day, seven days a week, with 99 percent planned uptime rating.

(iii) The system shall support, at minimum, a database of 1,000,000 application records.

(iv) The system shall support at minimum 20,000 concurrent full-access users, allowing users to create, read, update and delete transactions based upon their user role.

(D) (i) The program implementer shall demonstrate experience with developing and managing direct payment or grant programs, or direct payment and grant programs, including, but not limited to, program and application development, outreach and marketing, translation and interpretation, fraud protections and approval processes, secure disbursement, prioritizing the use of direct deposit, customer service, compliance, and reporting.

(ii) The program interface shall include, but not be limited to, the following:

(I) Capacity, such as whether the amount of the rental assistance in an application for assistance and that both parties are made aware of the opportunity to participate in the rental assistance program and accept the program parameters.

(II) Appropriate notifications to ensure that both parties understand that rental assistance is awarded in rounds of funding based on eligibility and that the eligible household is reminded that payment is ultimately being provided directly to the landlord, but the payment will directly address the eligible household's rental arrears or prospective rent, as applicable.

(III) Notification to both parties, including the landlord and the eligible household, respectively, of the initiation and completion of the application process, whether the process is initiated by the landlord or the eligible household. Upon payment, the program implementer shall provide an electronic record that payment has been made and keep all records available for the duration of the program, or as otherwise provided under state or federal law.

(E) The program implementer shall be able to manage a technology-driven duplication of benefits process in compliance with federal law.

(F) The program implementer shall comply with all state protections related to the use of personally identifiable information, including providing any necessary disclosures and assuring the secure storage of any personally identifiable information generated, as part of the application process.

(G) The program implementer shall coordinate its program activities with education and outreach contractors and any affiliated service or technical assistance providers, including those that reach non-English speaking and hard-to-reach households, with considerations for racial equity and traditionally underserved populations.

(2) The department may establish a contract with one or more education and outreach contractors to conduct a multilingual statewide campaign to promote program participation and accessibility.

(3) In accordance with paragraphs (1) and (2), the department shall seek contracted solutions that minimize total administrative costs, such that savings may be reallocated for use as direct assistance.

(4) The department may receive rental assistance program funding from localities or federally recognized tribes to administer on their behalf in a manner consistent with this chapter.

(b) (1) (A) A county with a population less than or equal to 200,000 and any grantee that is eligible for, but did not receive, a direct allocation of assistance from the Secretary of the Treasury pursuant to Section 501 of Subtitle A of Title V of Division N of the federal Consolidated Appropriations Act, 2021 (Public Law 116-260) shall receive assistance pursuant to the state reservation table, to be administered in accordance with this section.

(B) A grantee that was eligible for, but did not receive, a direct allocation of assistance from the Secretary of the Treasury pursuant to Section 501 of Subtitle A of Title V of Division N of the federal Consolidated Appropriations Act, 2021 (Public Law 116-260) and was eligible for, but did not receive, block grant assistance under Section 50897.2 shall receive its proportionate share of assistance, as determined by the state reservation table, to be administered in accordance with this section.

(2) (A) A grantee that was eligible for, but did not receive, block grant funds pursuant to Section 50897.2, and has elected to administer its direct share of assistance provided under Subtitle A of Title V of Division N of the federal Consolidated Appropriations Act, 2021 (Public Law 116-260), shall have its proportionate share of block grant funds administered pursuant to this section.

(B) (i) To minimize legal liability and potential noncompliance with federal law, specifically those violations described in Section 501(k)(3)(B) of Subtitle A of Title V of Division N of the federal Consolidated Appropriations Act, 2021 (Public Law 116-260), the department, or, if applicable, the program implementer, shall request that grantees described in this paragraph enter into a data sharing agreement for the purpose of preventing unlawful duplication of rental assistance to eligible households.

(ii) Notwithstanding any other law, a grantee that enters into a data sharing agreement required by this subparagraph may disclose personally identifying information of rental assistance applicants to the department or the program implementer for the purposes described in this subparagraph.

(iii) A grantee described by clause (ii) shall provide all applicable data, as determined by the department, before the department or program implementer begins administering funds within the grantee's jurisdiction.

(C) Except as otherwise provided in subparagraph (B), a grantee that is subject to assistance provided under this paragraph and received a direct allocation from the Secretary of the Treasury pursuant to Subtitle A of Title V of Division N of the federal Consolidated Appropriations Act, 2021 (Public Law 116-260) shall not be eligible for administrative and technical assistance provided by the department, including, but not limited to, support for long-term monitoring and reporting.

(D) The state, the department, or the program implementer acting on behalf of the department, shall be indemnified from liability in the administration of assistance pursuant to this paragraph, specifically any violation described in Section 501(k)(3)(B) of Subtitle A of Title V of Division N of the federal Consolidated Appropriations Act, 2021 (Public Law 116-260).

(3) To the extent permitted by federal law, a grantee that elects to participate in the program as provided in this section, and that received rental assistance funding directly from the Secretary of the Treasury pursuant to Subtitle A of Title V of Division N of the federal Consolidated Appropriations Act, 2021 (Public Law 116-260), shall add those funds received directly from the Secretary of the Treasury and any share of rental assistance funding provided pursuant to Section 50897.2 to the funds allocated to it pursuant to this section. Except as otherwise provided in paragraph (1) of subdivision (d), the total amount of funds described in this subparagraph shall be used by the grantee in accordance with this section. Participation shall be conditioned upon having an executed standard agreement with the Department.

(4) To the extent permitted by federal law, a federally recognized tribe that receives rental assistance funds directly from the Secretary of the Treasury pursuant to Subtitle A of Title V of Division N of the federal Consolidated Appropriations Act, 2021 (Public Law 116-260) may add its direct federal allocation of funds to be administered pursuant to this section. Participation shall be conditioned upon having an executed standard agreement with the department.

(c) Funds allocated pursuant to this section shall be used for those eligible uses specified in, and subject to the applicable requirements of, Section 50897.1.

(d) (1) Except as otherwise provided in paragraph (3), a grantee that receives funds pursuant to this section shall contractually obligate 65 percent of those funds no later than August 1, 2021. The department may, in its discretion, reallocate any funds allocated to a grantee that are not contractually obligated by that date to other grantees based on factors that include unmet need, rate of application submissions, rate of attrition, and rate of expenditures.

(2) Funds administered on behalf of a federally recognized tribe as provided in paragraph (4) of subdivision (b) are not subject to the requirements of this subdivision.

(e) (1) In any legal action to recover rent or other financial obligations under the lease that accrued between April 1, 2020, and September 30, 2021, before entry of any judgment in the plaintiff's favor, the plaintiff shall verify both of the following under penalty of perjury:

(A) The landlord has not received rental assistance or other financial compensation from any other source corresponding to the amount claimed.

(B) The landlord does not have any pending application for rental assistance or other financial compensation from any other source corresponding to the amount claimed.

(2) In any unlawful detainer action seeking possession of residential rental property based on nonpayment of rent or any other financial obligation under the lease, the court shall not enter a judgment in favor of the landlord unless the landlord verifies all of the following under penalty of perjury:

(A) That the landlord has not received rental assistance or other financial compensation from any other source corresponding to the amount demanded in the notice underlying the complaint.

(B) That the landlord has not received rental assistance or other financial compensation from any other source for rent accruing after the date of the notice underlying the complaint.

(C) That the landlord does not have any pending application for rental assistance or other financial compensation from any other source corresponding to the amount demanded in the notice underlying the complaint.

(D) That the landlord does not have any pending application for rental assistance or other financial compensation from any other sources for rent accruing after the date of the notice underlying the complaint.

Case 2:21-cv-01394-JAM-JDP Document 1 Filed 08/05/21 Page 50 of 52

(f) Notwithstanding any other state or local law, policy, or ordinance, for purposes of ensuring the timely implementation of resources pursuant to this section a grantee that has a population greater than 200,000 may enter into an agreement with the department to have its share of funds administered pursuant to this section by the department and may redirect those funds to the department for that purpose.

(g) (1) Except as provided in paragraph (2), the requirements of this section shall apply only to the administration of Round 1 funds.

(2) Subdivision (e) shall apply to the administration of Round 1 and Round 2 funds.

**SEC. 26.** Section 50897.3.1 is added to the Health and Safety Code, to read:

**50897.3.1.** (a) (1) The department may contract with a vendor to serve as the program implementer to manage and fund services and distribute emergency rental assistance resources pursuant to this section and consistent with the requirements of Section 50897.3.

(2) The department may establish a contract with one or more education and outreach contractors to conduct a multilingual statewide campaign to promote program participation and accessibility.

(3) In accordance with paragraphs (1) and (2), the department shall seek contracted solutions that minimize total administrative costs so that savings may be reallocated for use as direct assistance.

(4) The department may receive rental assistance program funding from localities or federally recognized tribes to administer on their behalf in a manner consistent with this chapter.

(b) (1) (A) A county with a population less than or equal to 200,000 and any grantee that is eligible for, but did not receive, a direct allocation of assistance from the Secretary of the Treasury pursuant to Section 3201 of Subtitle B of Title III of the federal American Rescue Plan Act of 2021 (Public Law 117-2) shall receive assistance pursuant to the state reservation table to be administered pursuant to this section.

(B) A grantee that was eligible for, but did not receive, a direct allocation of assistance from the Secretary of the Treasury pursuant to Section 3201 of Subtitle B of Title III of the federal American Rescue Plan Act of 2021 (Public Law 117-2) and was eligible for, but did not receive, block grant assistance under Section 50897.2.1 shall receive its proportionate share of assistance pursuant to the state reservation table to be administered pursuant to this section.

(2) (A) A grantee that was eligible for, but did not receive, block grant funds pursuant to Section 50897.2.1 and has elected to administer its direct share of assistance provided under Section 3201 of Subtitle B of Title III of the federal American Rescue Plan Act of 2021 (Public Law 117-2) shall have its proportionate share of block grant funds administered pursuant to this section.

(B) (i) To minimize legal liability and potential noncompliance with federal law, specifically those violations described in Section 501(k)(3)(B) of Subtitle A of Title V of Division N of the federal Consolidated Appropriations Act, 2021 (Public Law 116-260), the department, or, if applicable, the program implementer, shall request that Option C grantees enter into a data sharing agreement for the purpose of preventing unlawful duplication of rental assistance to eligible households.

(ii) Notwithstanding any other law, an Option C grantee that enters into a data sharing agreement as pursuant to this subparagraph may disclose personally identifying information of rental assistance applicants to the department or the program implementer for the purposes described in this subparagraph.

(iii) An Option C grantee described in clause (ii) shall provide all applicable data information, as determined by the department, before when the department, or program implementer, begins administering funds within the grantee jurisdiction.

(C) Except as otherwise provided in subparagraph (B), an Option C grantee shall not be eligible for administrative and technical assistance provided by the department, including, but not limited to, support for long-term monitoring and reporting.

(D) The state, the department, or the program implementer acting on behalf of the department shall be indemnified from liability in the administration of assistance pursuant to this paragraph, specifically with respect to a violation described in Section 501(k)(3)(B) of Subtitle A of Title V of Division N of the federal Consolidated Appropriations Act, 2021 (Public Law 116-260).

(E) (i) An Option C grantee shall not be eligible to have its rental assistance administered through the department determines the structure of the grantee's local rental assistance program would put the state's share of funds at risk of being recouped by the United States Treasury pursuant to Section 3201(e) of Subtitle B of Title III of the federal American Rescue Plan Act of 2021 (Public Law 117-2).

(ii) If, within 90 days of the effective date of this section, the department determines that an Option C grantee cannot satisfy the requirements of this subparagraph, the grantee's share of state funds shall be reallocated by the department to grantees based on factors that include unmet need, rate of application submissions, rate of attrition, and rate of expenditures.

(iii) Option C grantees that have funds reallocated pursuant to clause (i) may be eligible to receive funds, up to their total share of the state reservation table, upon demonstrating to the department the grantee has unmet need and funds would not be at risk of being recouped by the United States Treasury pursuant to Section 3201(e) of Subtitle B of Title III of the federal American Rescue Plan Act of 2021 (Public Law 117-2).

(3) To the extent permitted by federal law, a grantee that elects to participate in the program as provided in this section and that received rental assistance funding directly from the Secretary of the Treasury pursuant to Section 3201 of Subtitle B of Title III of the American Rescue Plan Act of 2021 (Public Law 117-2) shall add those funds received directly from the Secretary of the Treasury and any share of rental assistance funding provided pursuant to Section 50897.2.1 to the funds allocated to it pursuant to this section. Except as provided in paragraph (1) of subdivision (d), the total amount of funds described in this paragraph shall be used by the grantee in accordance with this section. Participation shall be conditioned upon having an executed standard agreement with the department.

(4) To the extent permitted by federal law, a federally recognized tribe that receives rental assistance funds directly from the Secretary of the Treasury pursuant to Section 3201 of Subtitle B of Title III of the federal American Rescue Plan Act of 2021 (Public Law 117-2) may add its direct federal allocation of funds to be administered pursuant to this section. Participation shall be conditioned upon having an executed standard agreement with the department.

(c) Funds allocated pursuant to this section shall be used for those eligible uses specified in and subject to the applicable requirements of Section 50897.1 and other eligible uses provided in Section 3201(d)(1)(D) of Subtitle B of Title III of the federal American Rescue Plan Act of 2021 (Public Law 117-2).

(d) A grantee that receives funds administered pursuant to this section shall contractually obligate those funds as follows:

(1) (A) A grantee participating in the state rental assistance program pursuant to Option A shall contractually obligate at least 75 percent of its first tranche of state funds by October 31, 2021.

(B) A grantee participating in the state rental assistance program pursuant to Option A shall contractually obligate at least 50 percent of its total share of state funds by January 31, 2022.

(2) (A) A grantee participating in the state rental assistance program pursuant to Option C shall contractually obligate at least 75 percent of its first tranche of state funds by October 31, 2021.

(B) A grantee participating in the state rental assistance program pursuant to Option C shall contractually obligate at least 50 percent of its total share of state funds by January 31, 2022.

(3) In reallocating funds pursuant to this subdivision, the department or, if applicable, the program implementer acting on behalf of the department, shall allocate unused funds to eligible grantees based on factors that include unmet need, rate of application submissions, rate of attrition, and rate of expenditures.

(4) Funds administered on behalf of a federally recognized tribe, pursuant to paragraph (4) of subdivision (b), are not subject to the requirements of this subdivision.

(e) Notwithstanding any other law, for purposes of ensuring the timely implementation of resources pursuant to this section, a grantee that has a population greater than 200,000 may enter into an agreement with the department to have its share of funds administered pursuant to this section by the department and may redirect those funds to the department for that purpose.

(f) The requirements of this section shall apply only to the administration of Round 2 funds.

**SEC. 27.** Section 50897.4 of the Health and Safety Code is amended to read:

**50897.4.** Case 2:21-cv-01394-JAM-JDP Document 1 Filed 08/05/21 Page 52 of 52 (a) Each grantee under this chapter shall provide to the department information relating to all applicable performance metrics, as determined by the department.

(b) Funds provided to a grantee under this chapter shall be subject to the same reporting and verification requirements specified in Section 501(g) of Subtitle A of Title V of Division N of the federal Consolidated Appropriations Act, 2021 (Public Law 116-260). The grantee shall, in addition, provide any other information that the department deems necessary for purposes of this chapter, including, but not limited to, weekly funding obligation, expenditure, and projection reports.

(c) To the extent feasible, each grantee shall ensure that any assistance provided to an eligible household under this chapter is not duplicative of any other state–funded rental assistance provided to that eligible household.

(d) (1) The department shall submit to the Joint Legislative Budget Committee, on a monthly basis for the duration of the program, a report that provides programmatic performance metrics for funds administered pursuant to this chapter. The report shall include, at minimum, the following information:

(A) Obligation of funds for assistance provided under this chapter.

(B) Expenditure of funds for assistance provided under this chapter.

(C) Expenditure by eligible uses for assistance provided pursuant to this chapter.

(D) Reallocation of funds, if any, for assistance provided pursuant to this chapter.

(E) Geographic distribution of funds provided pursuant to Section 50897.3.

(F) For the first monthly report submitted pursuant to this section only, an overview of which jurisdictions have elected to participate in the state rental assistance programs as provided in Sections 50897.2 and 50897.3, respectively.

(2) A report required to be submitted pursuant to this subdivision shall be submitted in compliance with Section 9795 of the Government Code.

**SEC. 28.** The provisions of this act are severable. If any provision of this act or its application is held invalid, that invalidity shall not affect other provisions or applications that can be given effect without the invalid provision or application.

**SEC. 29.** No reimbursement is required by this act pursuant to Section 6 of Article XIII B of the California Constitution because the only costs that may be incurred by a local agency or school district will be incurred because this act creates a new crime or infraction, eliminates a crime or infraction, or changes the penalty for a crime or infraction, within the meaning of Section 17556 of the Government Code, or changes the definition of a crime within the meaning of Section 6 of Article XIII B of the California Constitution.

**SEC. 30.** The Legislature finds and declares that Sections 11 and 13 of this act, which amend Sections 1161.2 and 1161.2.5 of the Code of Civil Procedure, imposes a limitation on the public's right of access to the meetings of public bodies or the writings of public officials and agencies within the meaning of Section 3 of Article I of the California Constitution. Pursuant to that constitutional provision, the Legislature makes the following findings to demonstrate the interest protected by this limitation and the need for protecting that interest:

This act balances the public's right to access records of judicial proceedings with the need to protect the privacy and future housing needs of tenants facing financial distress due to COVID-19.

**SEC. 31.** This act is an urgency statute necessary for the immediate preservation of the public peace, health, or safety within the meaning of Article IV of the California Constitution and shall go into immediate effect. The facts constituting the necessity are:

In order to address the hardships imposed by the COVID-19 pandemic on tenants and landlords in California as soon as possible, it is necessary that this act take immediate effect.