UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA RENTAL HOUSING ASSOCIATION, et al.,<br><br>        Plaintiffs,<br><br>    v.<br><br>GAVIN NEWSOM, et al.<br><br>        Defendants. | No. 2:21-cv-01394-JAM-JDP<br><br>**ORDER DISMISSING ACTION FOR LACK OF SUBJECT MATTER JURISDICTION** |

    This matter is before the Court on Plaintiffs' motion for summary judgment ("MSJ") and Defendants' cross-motion for summary judgment ("Cross-MSJ"). See MSJ, ECF No. 10; Cross-MSJ, ECF No. 16. Plaintiffs oppose Defendants' cross-motion for summary judgment. See Pls.' Opp'n, ECF No. 19. Defendants replied. See Defs.' Reply, ECF No. 24. Plaintiffs bring three claims against Defendants in their official capacity for constitutional violations. See First Amended Complaint ("FAC"), ECF No. 4. For the reasons set forth below, the Court dismisses this action in its entirety for lack of subject matter jurisdiction.[1]

---

[1] This motion was determined to be suitable for decision without oral argument. E.D. Cal. L.R. 230(g). The hearing was scheduled for October 18, 2022.

1

I.   BACKGROUND

On March 4, 2020, California Governor Gavin Newsom declared a State of Emergency in response to the COVID-19 pandemic. See Exh. 1 to Defs.' Request for Judicial Notice ("DJRN"), ECF No. 16-2. That same month, Governor Newsom issued executive order N-33-20 ("Stay-at-Home Order") directing all California residents to heed the directives of the State Public Health Officer and to stay home or at their place of residence. See Exh. 5 to DJRN, ECF No. 16-2. Following the Stay-at-Home Order, Governor Newsom issued executive order N-37-20 banning the enforcement of unlawful detainer eviction orders from March 27 to May 31, 2020, for renters affected by COVID-19. Defs.' Statement of Undisputed Facts ("DSUF") ¶ 37, ECF No. 16-3. In the executive order, Governor Newsom stated that "minimizing evictions during this period is critical to reducing the spread of COVID-19 in vulnerable populations by allowing all residents to stay home or at their place of residence in compliance with [the Stay-at-Home Order]." Exh. 5 to DJRN.

The California Legislature codified the protections of Governor Newsom's executive eviction moratorium on August 31, 2020, when the State enacted the COVID-19 Tenant Relief Act ("Tenant Act") in Assembly Bill 3088 ("AB 3088"). Code of Civ. Proc. §§ 1179.01, et seq. The Tenant Act provided temporary restrictions on unlawful detainer evictions of tenants if they complied with certain declaration requirements. Id. Tenants who submitted to their landlords declarations attesting that they were unable to pay rent due to COVID-19 related hardships were immunized from unlawful detainer actions for unpaid rent between

March 1 and August 31, 2020. §§ 1179.02(f), 1179.03(b). Subject to limited exceptions, courts could not find a tenant guilty of unlawful detainer for nonpayment of rent before February 1, 2021. § 1179.03.5.

The State went on to extend and modify these restrictions multiple times. See Senate Bill 91 ("SB 91") (extending restrictions to June 30, 2021); Assembly Bill 832 ("AB 832") (extending restrictions to September 30, 2021 and imposing other restrictions until March 31, 2022); Assembly Bill 2179 ("AB 2179") (extending restrictions to June 30, 2022). As a result, unlawful detainer actions for nonpayment of rent did not resume fully until July 1, 2022.

Plaintiffs, comprised of individual landlords and an association of rental housing owners, brought this suit on August 5, 2021, to challenge the constitutionality of AB 832. FAC ¶¶ 1, 3. Plaintiffs allege that AB 832 constitutes "an unconstitutional moratorium on the right of rental housing owners to repossess their properties for nonpayment of rent" in violation of the Due Process Clause, the Takings Clause, and the Contracts Clause of the U.S. Constitution. Id. ¶¶ 2, 4. Plaintiffs' and Defendants' cross-motions for summary judgment are now before the Court.

## II. OPINION

### A. Judicial Notice

Plaintiffs request judicial notice of seven documents in support of their motion for summary judgment. See Pls.' Request for Judicial Notice of Exhibits 1-6 ("PRJN"), ECF No. 11; see

also Pls.' Second Request for Judicial Notice of Exhibit 7 ("PRJN2"), ECF No. 20.

Defendants request judicial notice of twelve documents in support of their cross-motion for summary judgment. See Defs.' Request for Judicial Notice of Exhibits 1-12 ("DRJN"), ECF No. 16-2.

All of the above exhibits are matters of public record and therefore proper subjects for judicial notice. See Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001). Accordingly, the Court GRANTS Plaintiffs' request for judicial notice of Exhibits 1-7. The Court also GRANTS Defendants' request for judicial notice of Exhibits 1-12. The Court's judicial notice, however, extends only to the existence of these documents and not to their substance to the extent it is disputed or irrelevant. Lee, 250, F.3d at 690.

B. Analysis

The State contends that Plaintiffs' action is moot and that the Court therefore lacks subject matter jurisdiction over this case. Cross-MSJ at 10. Because federal subject matter jurisdiction concerns the Court's power to declare the law, "when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." Ex parte McCardle, 74 U.S. 506, 514 (1869). As such, the Court must affirm its jurisdiction before proceeding to the merits of summary judgment. See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94 (1998) (requiring that "jurisdiction be established as a threshold matter").

///

1. Mootness

The threshold question before the Court is whether this case is moot. "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." Rosebrock v. Mathis, 745 F.3d 963, 971 (9th Cir. 2014) (internal citations omitted). The party asserting mootness bears the "heavy burden" to show that "the challenged conduct cannot reasonably be expected to reoccur." Id.

The parties do not dispute that the challenged action—the State's restrictions on unlawful detainer actions for nonpayment of rent—ceased on June 30, 2022 with the expiration of AB 2179. See Pls.' Opp'n at 7; Cross-MSJ at 9. As such, "[t]he actual controversy has evaporated," because "there is no longer any state order for the court to declare unconstitutional or to enjoin. It could not be clearer that this case is moot." Brach v. Newsom, 38 F.4th 6, 11 (2022), citing Already, LLC. V. Nike, Inc., 568 U.S. 85, 91 (2013).

The remaining inquiry for the Court, therefore, is whether Plaintiffs' claims remain live under an exception to mootness. Plaintiffs contend that the Court should find their claims remain live under the voluntary cessation exception and the capable of repetition yet evading review exception. Pls.' Opp'n at 7-10. For the reasons given below, the Court disagrees.

2. Voluntary Cessation Exception

"[A] defendant cannot automatically moot a case simply by ending its unlawful conduct once sued." Already, 568 U.S. at

91.  As the Supreme Court instructed, a party "should not be able to evade judicial review, or to defeat a judgment, by temporarily altering questionable behavior." City News & Novelty, Inc. v. City of Waukesha, 531 U.S. 278, 284 n.1 (2001). The party asserting mootness must show that "the challenged behavior cannot reasonably be expected to recur." Already, 568 U.S. at 96.  While the Court may "treat the voluntary cessation of challenged conduct by government officials with more solicitude . . . than similar actions by private parties," the Court must still diligently "probe the record to determine whether the government has met its burden, even as [the Court grants] it a presumption of good faith." Bell v. City of Boise, 709 F.3d 890, 898-99, n.13, (9th Cir. 2013); Rosebrock v. Mathis, 745 F.3d 963, 971-72 (9th Cir. 2014).  Once the government has met its burden, it is the opposing party's burden to show there is a "reasonable expectation of reenactment" that defeats the presumption of mootness. Bd. of Trs. of Glazing Health & Welfare Trust v. Chambers, 941 F.3d 1195, 1199 (9th Cir. 2019) (en banc).  A reasonable expectation must be "founded in the record [and not] on speculation alone." Id.

   The Court finds that the State has met its burden to prove upon the record that the challenged action cannot reasonably be expected to recur.  First, as the Ninth Circuit noted, "the repeal, amendment, or expiration of challenged legislation is generally enough to render a case moot and appropriate for dismissal." Id. at 1198.  The record shows that AB 2179's expiration breaks with the State's previous pattern of behavior: When AB 3088's restrictions on unlawful detainers would have

1  expired on January 31, 2021, the State extended it with SB 91;
2  when SB 91 would have expired on June 30, 2021, the State
3  extended it with AB 832; and when AB 832 would have expired on
4  March 31, 2022, the State extended it with AB 2179.  On and on
5  in an unbroken train, the State renewed its restrictions on
6  unlawful detainers against tenants for nonpayment of rent.  That
7  the State allowed AB 2179 to expire on June 30, 2022 suggests,
8  therefore, that it is unlikely to renew similar restrictions in
9  the future.
10      Further, the record shows that the State's approach to
11 unlawful detainers has been "steady and consistent" in its
12 gradual tapering.  Brach, 38 F.4th at 15.  At the start of the
13 pandemic, tenants with qualifying COVID-19 hardships could not
14 be evicted by unlawful detainer for nonpayment of rent between
15 March 1, and August 31, 2020.  §§ 1179.02(f), 1179.03(b).  This
16 protection lasted until October 1, 2021, from which point
17 forward landlords could seek unlawful detainers for all future
18 failures to pay rent.  §§ 1179.03(g), 1179.03.5.  Landlords
19 could also evict tenants who failed to pay at least 25 percent
20 of past rent due between September 1, 2020 and September 30,
21 2021.  §§ 1179.02(i), 1179.03(g).  The State continued to roll
22 back its restrictions when it passed AB 2179, which limited the
23 bar on unlawful detainers to tenants who had applied for rental
24 assistance by March 30, 2022.  § 1179.03(c)(7).
25      As Defendants point out, even during the Omicron variant
26 surge, when the State's COVID-19 case count exceeded what it was
27 early in the pandemic, the State did not reimpose a full-out
28 moratorium on evictions.  Cross-MSJ at 12; See Brach, 38 F.34th

1  at 14 (finding a case moot where the State "maintained in-person
2  instruction throughout the surge of the Omicron COVID-19
3  variant, even while the State's case count soared"). As such,
4  it is apparent that, with each bill passed, the State gradually
5  rescinded its restrictions on unlawful detainers until all
6  restrictions were finally lifted on June 30, 2022. Defs.' Reply
7  at 4-5. Accordingly, the Court finds that the State has carried
8  its burden to show that there is no reasonable expectation of
9  reenactment.
10      As the party seeking to rebut the presumption of mootness,
11 Plaintiffs must show there is a reasonable expectation that the
12 State will reoffend. Bd. of Trs. of Glazing Health & Welfare
13 Trust, 941 F.3d at 1199. Plaintiffs point to the fact that
14 "[t]he State has not committed itself to never re-impose such a
15 moratorium again [and] the State refuses to acknowledge the harm
16 that its moratorium has caused rental housing owners." Reply 8-
17 9, citing Brach, 38 F.4th at 15 ("Most importantly, the State
18 has 'unequivocally renounce[d]' the use of school closure orders
19 in the future"). Plaintiffs read too much into Brach. Although
20 the Ninth Circuit found it compelling that the State
21 "renounce[d] its use of school closure orders in the future,"
22 the court did not require an explicit renouncement for its
23 analysis. The renouncement was significant only because it
24 demonstrated the State's "commitment" to keeping schools open.
25 Id. As such, where the State shows through other means that it
26 is committed to quitting the challenged conduct, the State does
27 need an explicit announcement denouncing its previous conduct.
28 ///

8

1    Plaintiffs next argue that their claims remain live because
2 Governor Newsom's declaration of a State of Emergency is still
3 in force.  Pls.'s Reply at 9.  However, given that this fact was
4 immaterial in Brach, the Court declines to afford it weight
5 here.  See Brach 38 F.4th at 9 (acknowledging the State of
6 Emergency but not discussing it); contra, Id. at 16 (dissent
7 opinion) (discussing the relevance of the ongoing State of
8 Emergency).
9    Plaintiffs also argue that their claims remain live because
10 the pandemic "is far from over," and that the State has both the
11 power and incentive to reimpose an eviction moratorium in the
12 future.  Pls.' Reply at 9. Plaintiffs' argument fails because a
13 "[r]easonable expectation means something more than 'a mere
14 physical or theoretical possibility.'"  Brach quoting Murphy v.
15 Hunt, 455 U.S. 478, 482 (1982).  As the Brach court explained,
16 the power to reenact a challenged policy is not a sufficient
17 basis for a court to conclude that a reasonable expectation of
18 recurrence exists.  "Rather, there must be evidence indicating
19 that the challenged [policy] likely will be reenacted."  Brach
20 quoting Larsen v. U.S. Navy, 525 F.3d 1, 4 (D.C. Cir. 2008).  In
21 the absence of a showing upon the record that there is a
22 reasonable expectation that the challenged conduct will reoccur,
23 the Court concludes the voluntary cessation exception does not
24 apply.
25         3.   Capable of Repetition yet Evading Review
26    The Court also finds the capable of repetition yet evading
27 review exception does not apply.  This exception applies only in
28 extraordinary cases where "(1) the duration of the challenged

action is too short to allow full litigation before it ceases, and (2) there is a reasonable expectation that the plaintiffs will be subjected to it again." Alaska Ctr. For Evn't v. U.S. Forest Serv., 189 F.3d 851, 854-55 (9th Cir. 1999).

Plaintiffs argue their case is live under the capable of repetition yet evading review exception because the duration of the challenged action was too short to allow full litigation before it ceases—"[e]ach moratorium extension lasted months and easily evaded judicial review, allowing it to expire well before a court could pass on its constitutionality." Pls.' Opp'n at 9. The Court observes that while each moratorium extension lasted only months, the extensions were consecutive such that the moratorium effectively lasted from August 31, 2020 to October 1, 2021, and, in a more limited capacity, from October 1, 2021 through June 30, 2022. As Defendants point out, "[t]hat this case did not resolve prior to the moratorium expiring on October 1, 2021 is due entirely to Plaintiffs' decisions to wait more than a year to file their case." Defs.' Reply at 5.

Even if the moratorium were too short to allow full litigation, Plaintiffs would not prevail on the second prong of the capable of repetition analysis. As the Brach Court instructed, the voluntary cessation and capable of repetition exception are "analogous" to one another. Brach, 38 F.4th at 15. Just as the Brach court's "rationale for rejecting [the capable of repetition exception] mirrors much of [its] analysis regarding the voluntary cessation exception," so too does this Court's present analysis mirror the one above. Id. Because the challenged moratorium has already expired and because the public

10

health landscape is drastically different from the start of the pandemic, there is no reasonable expectation that Plaintiffs will be subjected to the challenged conduct again.  The "reasonable expectation" prong of the Court's analysis has not been met.  Alaska Ctr. For Evn't, 189 F.3d at 854-55.  As such, the Court finds the capable of repetition yet evading review exception does not apply.

          4.   Nominal Damages

The Court is unpersuaded by Plaintiffs' contention that their prayer for nominal damages saves this action from mootness.  MSJ at 16, citing Bernhardt v. County of Los Angeles, 279 F.3d 862, 872 (9th Cir. 2002) ("A live claim for nominal damages will prevent dismissal for mootness").  In this case, Plaintiffs have only requested nominal damages against State Defendants who have been sued in their official capacities.  See FAC.  The Eleventh Amendment bars such claims.  See Kentucky v. Graham, 473 U.S. 159, 169-70 (1985) (holding that the Eleventh Amendment immunizes state officials sued in their official capacity from claims for retrospective relief, including monetary damage claims.)  Accordingly, the Court finds that Plaintiffs' contention regarding nominal damages is without merit.  There being no viable damages claim to rescue Plaintiffs' case, this case is moot.

### III.  ORDER

For the reasons set forth above, the Court DISMISSES Plaintiffs' Complaint in its entirety for lack of subject matter jurisdiction.  The Court further DENIES Plaintiff's motion for

summary judgment and Defendants' cross-motion for summary judgment as MOOT.  The Clerk of the Court is directed to CLOSE this case.

　　　IT IS SO ORDERED.

Dated: October 11, 2022

JOHN A. MENDEZ
SENIOR UNITED STATES DISTRICT JUDGE